HEARD APRIL TERM, 1878.

## ROSBOROUGH *vs.* McALILEY.

Where the administrator of the principal debtor placed in the hands of the creditor choses in action more than sufficient to satisfy the debt, and such creditor, having collected the choses in action, misapplied the money, it was *held* that the sureties of the principal debtor were discharged.

Any positive act done by the creditor which is injurious to the surety, or inconsistent with his rights, discharges him from liability for the debt.

Where there are several executors, each has entire control over the assets in his possession, and his acts in relation thereto bind the others; and this rule applies to notes taken by the executors for the assets of the estate.

BEFORE KERSHAW, J., AT CHESTER, OCTOBER, 1877.

Action by William H. Rosborough against Samuel McAliley and John L. Harris to recover the amount of a sealed note.

The case is fully stated in the decree of His Honor the Circuit Judge, which is as follows:

KERSHAW, J. This action was brought on to be heard at Chester, at the October Term, 1877, upon a question of law made by the pleadings.

The complaint was in the ordinary form, charging the defendants, as two of three makers of a joint several sealed note, payable one

day after date to James Hemphill and Robert Hemphill, executors of William Moffatt,—the first maker and alleged principal of the note, Richard E. Kennedy, being deceased, and the note having been assigned by the payees to the plaintiff. The note was dated March 10th, 1855, and at the time this action was commenced more than $17,700 were estimated to be due thereon.

To this complaint the defendants put in an answer in due time, and later, by leave of Court, an amended answer.

To these answers the plaintiff demurred " for insufficiency in not stating facts sufficient to constitute a defense."

Every fact, therefore, well pleaded in the answer, is admitted ; and if, collectively, they amount in law to a defense to this action, the defendants are entitled to judgment; if otherwise, the plaintiff.

I have endeavored to bestow upon the investigation of this cause that earnest and careful consideration which its importance demands, aided, as I have been, by able and learned arguments of counsel on both sides, worthy of the large interests involved, and have reached a conclusion adverse to the plaintiff.

The answer states, among other facts, the following:

That Richard E. Kennedy, deceased, was the principal, and defendants the sureties, to the note which was executed in the presence of James Hemphill, and made payable to said James Hemphill and Robert Hemphill, as executors of William Moffatt.

That the note remained in the hands of said James Hemphill until about a month before the commencement of this action, (17th March, 1875,) and was then assigned to plaintiff long after the maturity of said note.

That James Hemphill, as executor of said William Moffatt, controlled the business of the said estate exclusively, his coexecutor taking no part in its administration.

That Richard E. Kennedy died in 1855, about six months after the execution of said note, leaving a will and one Langdon C. Hinton administrator upon the estate with the will annexed. That the said administrator selected the said James Hemphill as his adviser and counsel in all matters touching said estate.

That, in pursuance of a direction in the will of said Kennedy, real and personal property of the estate, amounting to $40,000, were sold, and the obligations taken at said sale, as well as the choses in action due the said Kennedy at the time of his death, were placed in the hands of said James Hemphill for collection;

and from said obligations and choses in action large sums of money were realized and came into the hands of said James Hemphill, who was repeatedly requested and urged by the said L. C. Hinton, administrator as aforesaid, to pay the said sealed note, the subject of this action, out of the money and choses in action in his hands; but the said Hemphill did not so apply the said moneys in his hands, but paid debts and claims over which said sealed note had priority in law.

That the said James Hemphill had exclusive control of the said sealed note until he delivered it to the plaintiff; and while so in his possession large sums of money were in his hands which belonged to the estate of said R. E. Kennedy, deceased, which the administrator of the said Kennedy often requested to be applied to the payment of said sealed note, which was declined by the said James Hemphill; and the said moneys were, by the hands of said Hemphill, applied to the simple contract debts of the testator.

That the said James Hemphill acting as the attorney of the said administrator, and being at the same time the creditor holding the said sealed note in his possession, did, by his advice and counsel, induce the said administrator to accept the payment of good obligations to a large amount, the property of said estate, Confederate currency of little value, and particularly a large sum of money, $6,000, from one M. S. Hardin, in 1863, a perfectly solvent and responsible party, which defendants alleged, on belief, was upon the faith that said Confederate money would be accepted by the said Hemphill in payment of the said sealed note; but the said Hemphill refused and declined to receive the said Confederate money when offered to be paid by the said administrator in liquidation of said obligation, &c., alleging that, by reason of the facts stated, the defendants had suffered positive damages and injury.

The amended answer also alleges that the said James Hemphill, in February, 1871, was made the Receiver of the estate, both real and personal, of R. E. Kennedy, deceased, and that soon thereafter the said Hinton, the administrator, placed in his hands as Receiver all the assets of said estate; and that the said Receiver received large sums of money from the sales of the real estate of said Kennedy. And defendants allege, upon information and belief, that the said Receiver collected a sum sufficient to have satisfied the said sealed note, the subject of this action, and *which was legally applicable to the payment thereof,* &c. There are other facts alleged

in the answer which the defendants claim contribute to the defense they set up, which I do .not transcribe, but may be referred to as tending to sustain the judgment I shall render herein.

I am unwilling to rest the decision upon the ground of laches generally, but hold that the conduct imputed by the answer to Mr. Hemphill, the payee of the note, being admitted, as stated in the answer, operated as a discharge of the sureties to the note in question.

The rule of law is conceded to the full extent claimed by the plaintiff's counsel. I cannot state that rule better than it is found in the case of *Clark* vs. *Sickler*, (19th Sickles, 64 N. Y., 231,) cited by one of the counsel for plaintiff at the hearing. For the purposes of the plaintiff, that case is as strong, perhaps, as anything authoritative that can be found. It was one of great research, and the decision was concurred in by the full bench of Judges of the Appeal Court of New York, the opinion being delivered by the Chief Justice, Church. He says: "The general rule applicable to the relation of creditor and surety is stated by Judge Story as follows: If a creditor does any act injurious to the surety or inconsistent with his right, or if he omits to do any act when required by the surety which his duty enjoins him to do, and the omission proves injurious to the surety, the latter will be discharged, and he may set up such conduct as a defense to any suit brought against him.—1 Story's Eq., 325, 326, and cases there cited. The current of authorities, which I think is quite harmonious, establishes that the act which will discharge a surety must be legally injurious or inconsistent with his legal rights.

"An agreement with the principal debtor extending the time of payment or in any way changing the contract made by the surety will have that effect; so the release of a security held by the creditor and the like. * * * It is well settled that mere indulgence will not discharge a surety. The other principle referred to is, that the surety may be discharged from an omission of duty on the part of the creditor, but the surety must intervene and request the performance of the duty. It has been established, accordingly, that if a surety request the creditor to sue, and the latter neglects to do so, the surety will be discharged if the neglect produced injury.— 2 K., N. Y., 552. Here there was no request. The surety did nothing. He was not prevented from demanding prosecution by this creditor, nor from paying the note and prosecuting the principal himself."

In this case the point decided was that "an offer upon the part of a principal debtor to pay, and an omission so to do because of a request of the creditor that he retain the money, and the subsequent insolvency of the principal, do not discharge a surety."

Our own cases, without having had occasion to apply the rule in any such extreme cases as that, have laid down the principle of the law in almost identical terms.—*Lang* vs. *Brevard*, 3 Strob. Eq., 64; *Hampton* vs. *Levy*, 1 C. Ch., 107. In the former case the judgment of the Court in the case of *King* vs. *Baldwin* (17 Johns. Ch., 384,) is cited and approved, that "when the creditor *did an act* injurious to the surety, or omitted to do an act, *when required*, which equity and his duty to the surety enjoined it upon him to do, and which omission was injurious to the surety, in either of these cases the surety would be discharged." There is no difference, therefore, between the Court and the plaintiff's counsel in regard to the principles of law by which this case is to be decided, and it only remains to reconcile with these principles the conclusions at which I have arrived.

One of the allegations of the answer is, that after the death of the principal debtor his administrator placed funds sufficient for the payment of the note in question, belonging to the estate of the principal, and requested him therefrom to pay the note, he being the payee and holder of the note, and he declined so to do, but applied the fund to the payment of other debts of the principal over which *the sealed note in question was legally entitled to priority of payment.* At the request of the administrator of the debtor, it was the duty of Mr. Hemphill to pay the note when requested by his principal. If the payee had been another than himself, it would have been his duty to have tendered the money for it when in funds, as it is alleged he was; in which case, had the payee refused to receive the money, the surety would have been discharged.—46 Vt., 258. Uniting in himself the two characters of agent and payee, and not complying with the instruction of his principal by applying the funds to the note, he cannot stand on a better footing in regard to the sureties than he would have done had the money been tendered to him in payment of the note by the principal or his personal representative. In the language of the Court already cited in *Lang* vs. *Brevard*, he "omitted to do an act, when required, which equity and his duty to the surety enjoined it upon him to do." The allegation is that the sureties were "injured and damaged"

thereby, and, consequently, the case falls within the rule in every particular, and the sureties were consequently discharged.

In the case last cited it is said that where there was "an obstruction, abandonment or waiver of counter securities" on the part of the creditor the surety would be discharged—a statement well sustained by authority—and it was immaterial whether the surety knew of the existence of the securities or not.—See cases cited in *Watson* vs. *Alcock*, 19th English Law and Eq. R., 66. Applying this rule to the circumstances alleged, we find that the payee had in his hands funds belonging to the estate of the debtor, which he was directed to pay the debt with by the administrator, who had a right to control the funds; and yet this highest of all securities was voluntarily waived by the payee, in total disregard of the rights of the sureties. The question in principle is simply this: The payee of a note upon which there is a surety has funds in his hands belonging to the principal debtor and subject to his control. This fund the debtor directs to be applied to the note in question, in order that he might relieve the surety, and he fails so to apply it. Can there be any doubt that the surety would in that case be discharged? Yet that is this case.

Again, the amended answer alleges in substance that James Hemphill was made the Receiver of all the assets of the estate of the said R. E. Kennedy, the principal in the note, and collected a sum sufficient to have satisfied the said sealed note, and "*which was legally applicable to the payment thereof.*" Here, again, if this be true, there was an omission to perform a *legal duty* when he failed to make such application of the funds in his hands as alleged in the answer, the effect of which was to discharge the sureties.

It is quite clear to my mind that the facts alleged in the answer constitute, if true, a valid defense to the action. The demurrer must, therefore, be overruled.

The effect, however, of this decision will not be to determine the cause necessarily; but the allegations of the answers remain as controverted, by a direct denial or avoidance, under Section 191 of the Code of Procedure.—See *Mobley* vs. *Cureton*, 6 S. C., 49.

It is, therefore, ordered and adjudged that the demurrer be, and the same is hereby, overruled, and that the defendants have judgment for the costs of the demurrer and the costs and disbursements of the term, to be adjusted by the Clerk.

The plaintiff excepted to the foregoing decree, and appealed therefrom on the ground—

In that His Honor Judge Kershaw did not sustain the demurrer of the plaintiff to the answer of the defendants herein.

*Rion*, for appellant:

I. Plaintiff's case has to do with the acts of James Hemphill as one of the *payees* of the note, and not as the *legal adviser* of the administrator of the principal, nor as the *Receiver* of the estate of the principal. Hemphill may have been right, or he may have been wrong, in his ideas of his duties as attorney or Receiver; but, if wrong, he is responsible in his character as attorney or as Receiver, as the case may be. That James Hemphill is an attorney and solicitor of the Courts of this State of long and eminent standing affords some presumption that he had some good legal objections to the payment of the note in either capacity.

II. There is no allegation in the answer that the *sureties* requested Hemphill to pay the note.

III. There is no allegation that Hemphill, in his character as *payee*, was requested to *receive* payment of the note, nor, farther, that his co-payee was so requested, or consented to the payment. The Court will bear in mind, in this connection, that the two Hemphills were co-payees in their capacity " *as co-executors*."

IV. But if James Hemphill, in his character as *payee*, had been requested by the *principal* to *receive* payment of the note, and had not received such payment, this would not discharge the sureties from their liability.— *Clark* vs. *Sickler*, (19 Sickles, 64 N. Y., 231,) and numerous cases there cited.

The Court will observe that in the case now under consideration there is no allegation of a *request by the sureties*.

*Hamilton*, contra:

The principle of law by which this case is to be governed, which is condensed from all the authorities, and now universally accepted, is succinctly stated by Judge Story: " If the creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, the latter

will be discharged, and he may set up such conduct as a defense to any suit brought against him.—1 Story's Eq., 325, 326.

The cases of *Paine* vs. *Packard* (13 Johns. Ch., 154,) and *King* vs. *Baldwin* (17 Johns. Ch., 384,) have furnished the text from which this rule has been derived by all the writers on this subject, and have controlled subsequent judicial decisions.

In the case of *Lang* vs. *Brevard*, (3 Strob. Eq., 59,) it is adopted, and the authority of the two last named cases acknowledged. In this case the Court further says: "I will not say that there might not occur a case of outrageous neglect on the part of the creditor in omitting to recover his money from the principal debtor in which the surety would be exonerated."

Let us view this case by the light of this rule and the authorities by which it was established.

The acts injurious to these sureties and inconsistent with their rights, of which they complain against the creditor, are :

1. That being such creditor and attorney and agent of the principal debtor, and having abundant moneys in his hands to pay the note, when requested and urged to do so by his client, he failed to apply said moneys in payment thereof, but of his own motion applied the same to simple contract debts.

By this conduct of the creditor these sureties were deprived of two indispensable privileges—the one the payment of the debt, with the right to be subrogated to the creditor's right as a bond creditor; the other the right to require the creditor to sue the principal debtor, suggesting a *devastavit* in paying debts out of their legal order, because the creditor had deprived himself from bringing such a suit and was completely estopped by his own acts.

"A surety is at liberty, if he thinks the creditor not sufficiently energetic, to pay the debt, and become subrogated to his right, and may manage the claim to his own satisfaction; it is only where the surety loses his right of subrogation by the act of the creditor that he is discharged."—DeCollyer on Surety and Guarantor, 432; *Barnes* vs. *Crandall*, 11 La. Ann., 119; *Hayes* vs. *Ward*, 4 Johns. Ch., 123; Code Napoleon, §§ 2007, 2029.

"The surety is generally discharged by the loss, through the fault of the creditor, of securities received by the creditor from the principal debtor."—DeCollyer on Surety and Guarantor, 438.

Mr. Hemphill, the creditor, completely disabled himself by his own act from suing the administrator of this estate upon his bond,

suggesting a *devastavit*. He took away the right of subrogation from these sureties had they paid the debt. The assets of the estate were gone by his advice. An action suggesting a *devastavit* would have been of no avail, as is shown in the case of *Hinton* vs. *Kennedy*, (3 Rich., N. S., 459,) when this very administrator was excused from his misapplication of the assets, mainly on the ground of the advice given him by Mr. Hemphill, the creditor, acting as his attorney.

The fact that Mr. Hemphill having the funds in his hands to pay this note, and being urged and requested by the administrator to so apply them, amounted to a tender by the administrator and a deposit of the money to the use of the creditor.—DeCollyer, 428; *Mitchell* vs. *Merrell*, 2 Blacks., Ind.; *Broome* vs. *Dysinger*, 1 Rawles, (Pa.,) 407; *Joselyn* vs. *Eastman*, 46 Vt., 258.

There is a case which was much relied upon on circuit as conclusive against these sureties.—*Clark* vs. *Sickler*, 64 N. Y., 231.

The facts of that case are as follows: Defendant, Sickler, signed as surety for one Mott, of which the payee had notice. The Referee found that after the note became due, Mott, the principal, borrowed the money and went to the house of Wright for the purpose of paying the note, and offered the money to Wright's wife, who was his agent; she declined to receive the money, as she and her husband had no use for it, and would rather that Mott should keep it.

Although we consider this case of doubtful authority, in view of the cases already quoted on the subject of tender, it is apparent that the reason influencing the Court in its decision must have been that the debtor consented to keep the money.

But even if this was not so, our case is much stronger, and is as if the wife of Wright had consented to hold the money, and afterwards Wright, the creditor, had of his own motion applied it to some other debt of Mott's. The case which fits ours, and is quoted with approval in the case of *Clark* vs. *Sickler*, just mentioned, is that of *Sears* vs. *Van Dusen*, 23 Mich., 351: "Where one who has purchased a note overdue, the collection of which has been guaranteed by a prior owner thereof, refuses to receive the money when offered to him by the makers, and delays the collection of such note until the makers thereof have failed, such guarantor is discharged." Thus says the last named case.

But there is another which makes even stronger for these sureties: *Hurd* vs. *Spencer*, 40 Vermont, 581. It was where the cred-

itor, having a check for moneys in his hands, properly applicable to the debts for which the surety was liable, applied the same to the payment of other obligations of the principal debtor.

The principle announced is as follows:

" When a creditor has security placed in his hands by the principal on account of the debt, and on which the surety has a right to rely, he has no right to part with it or appropriate it to any other purpose without the consent of the surety; and if he does so, he thereby discharges the surety to the amount of the value of the security."—3 Lead. Cas. in Eq., 552; *Perrine* vs. *Insurance Company*, 22 Ala., 575.

2. The other injurious acts of which these sureties complain is, that by the advice of the creditor, the administrator, the principal received $6,000 in Confederate money, on the faith that the creditor would accept it in payment of his debt; *pro tanto*, we think the surety would be discharged.

3. Lastly, where the creditor became the Receiver of the estate of the principal, received large sums of money therefrom which were legally applicable to the payment of the note, the subject of this action, and did not so apply the same, the sureties are discharged. Under the circumstances of this case, we think the judgment of this Court should be final. It has been once tried by a jury, and taken from that arbitrament by the motion of the plaintiff himself. It would be a practice to be discouraged by the Courts that he should again return to a jury for trial on the facts. The Circuit Judge was not aware of the fact of its trial by a jury, or we are sure he would not have granted leave to plaintiff to submit the issues again.

October 29, 1878. The opinion of the Court was delivered by

McIVER, A. J. The sole question in this case is whether the respondents were discharged from their liability as sureties on a certain sealed note by reason of the conduct of one of the payees, James Hemphill, who was at the time the holder, towards the principal debtor. The question arises on a demurrer to the answer, upon the ground that it does not state facts sufficient to constitute a defense to the action. Every allegation of fact, therefore, which is well pleaded in the answer must be taken as admitted. For a full statement of these facts reference must be had to the decision of the Court below.

The rule "that if a creditor does any act injurious to the surety or inconsistent with his rights, or if he omits to do any act, when required by the surety, which his duty enjoins him to do, and the omission proves injurious to the surety, in all such cases the latter will be discharged," (1 Story Eq., § 325,) is well established and fully recognized in this State.—*Lang* vs. *Brevard*, 3 Strob. Eq., 64.

The only inquiry, then, in this case is, whether the creditor has done any act injurious to the sureties or inconsistent with their rights. It is alleged in the answer that the administrator of the principal debtor placed in the hands of the said James Hemphill for collection choses in action to an amount much more than sufficient to pay this debt, and that he realized large sums of money therefrom, out of which he was repeatedly requested and urged by the administrator to pay the sealed note upon which this action was brought, but that, instead of doing so, he applied the money to the payment of simple contract debts, over which this sealed note had priority. If these allegations be true, and, for the purposes of this case, they must be so taken, it is difficult to conceive how there can be a doubt that the creditor has done an act injurious to the sureties and inconsistent with their rights; for here the administrator of the principal debtor had not only placed in the hands of the creditor securities which would furnish the means of paying the debt, but those means had been actually realized, and the creditor, contrary to the request and directions of the administrator, had diverted those means to other and illegal purposes. So that it is very clear that the creditor has done a *positive* act by *misapplying*—not simply neglecting to apply—the means furnished him by the principal debtor for the payment of the debt, and that this act was "legally injurious to the sureties and inconsistent with their legal rights;" because the creditor having the right to require the assets of the insolvent estate of his intestate debtor to be applied to this sealed note in preference to simple contract debts, and the sureties being entitled to be subrogated to all the rights which the creditor had to secure the payment of the debt, it necessarily follows that the act of the creditor in misapplying the assets was an act prejudicial to the legal rights of the sureties and that they are thereby discharged. The fact that the sureties made no request to or demand upon the creditor cannot affect the case as it is now presented. The rule, as above stated, presents two distinct grounds upon which sureties may claim a discharge: 1st. Where

the creditor does some *positive* act injurious to the rights of the sureties. 2d. Where, after request or demand from the sureties, he *omits* to perform some duty enjoined upon him. Such a demand or request would, therefore, have been essential if the ground upon which the discharge of these sureties was claimed had been simply an omission of duty on the part of the creditor; but where, as we have seen, the true ground upon which the sureties claim their discharge is that the creditor has done a *positive* act which proved injurious to the legal rights of the sureties, no such request or demand is necessary.

The fact that the sealed note in question was made payable to the two Hemphills, as executors, and that only one of them participated in the transactions which it is claimed amounted to a discharge of the sureties, cannot affect the conclusion which we have reached. For, aside from the fact that it is alleged in the answer that "James Hemphill, as executor of the estate of Wm. Moffatt, controlled the business of said estate exclusively, the said Robert Hemphill taking no part in its administration," which allegation is by the demurrer admitted to be true, the rule of law is too well settled to admit of controversy that "co-executors, however numerous, are regarded in law as an individual person, and, by consequence, the acts of any one of them, in respect to the administration of the effects, are deemed to be the acts of all, for they have all a joint and entire authority over the whole property. Hence a release by one of several executors is valid and shall bind the rest."—2 Wms. on Ex., 683, 2d Am. ed.

Nor does the fact that the sealed note in question was not payable to the testator, but was a note taken subsequent to his death, payable to James Hemphill and Robert Hemphill, *as executors of William Moffatt,* and, therefore, presumably given to secure the payment of the purchase money of property of the testator sold by such executors, alter the case. For it is conclusively shown by the case of *Rhame* vs. *Lewis* (13 Rich. Eq., 269,) that notes so taken are as much assets of the testator as those made payable to him, and hence, it would seem to follow, would be subject to the same rules as govern the latter in respect to the control which one of two co-executors has over them.

The judgment of the Circuit Court is affirmed.

*Willard,* C. J., and *Haskell,* A. J., concurred.