WITHERSPOON v. WATTS.

1. Circuit decree charging only one of two executors with funds of the estate received by the executor charged, sustained.
2. Executors will not be removed from office, except where guilty of willful misconduct, waste or improper disposition of the assets.
3. A widow having renounced all interest under her husband's will and elected to take dower, the dower is not primarily chargeable upon the property given to the widow by the will, but must be laid off in each of the several tracts of land; or if money be assessed in lieu of dower, the assessment must be paid by the devisees of the land, or out of the proceeds of their sale.
4. Funds of the residuum used by the executors in paying off the assessment for such dower, must be replaced by the devisees of the land or out of the proceeds of sale of their land.
5. A bequest of money afterwards described by the testator as property "specifically disposed of," is a specific legacy.

6. A finding of fact by the Circuit judge as to a claim of land by adverse possession, sustained.

7. Where a testator disposed of a tract of land to be held in trust for A., for life, and by the same clause forgave A. a large indebtedness, where A. accepted this release and was a party to two actions in which this tract was claimed to be the property of testator, and the dower claim of the widow therein was provided for out of other property of the testator, A. will be held to an election and cannot afterwards claim this land by adverse possession under a parol gift from testator.

8. Where a widow renounces her interest in an estate under a will, property left to her for life with remainder over, vests instantly and absolutely in the remaindermen, and property given absolutely to the widow becomes assets in the hands of the executors undisposed of by the will.

9. Where land is purchased with the proceeds of property specifically devised and is then turned over to a legatee in payment of his specific legacy, the amount so used must be refunded out of the estate if sufficient, or else out of the purchased land.

---

Before KERSHAW, J., Laurens, November, 1880.

Hon. A. P. Aldrich, of the Second Judicial Circuit, sat at the hearing of this appeal in the stead of the Chief Justice, who had been of counsel in the cause.

Action by J. H. Witherspoon and Phœbe G., his wife, against James W. Watts and William Anderson, as executors of the will of John D. Williams, deceased, John G. Williams, John D. Garlington, W. A. W. Anderson and J. D. Watts, commenced December 27th, 1879.

The case was referred to a referee, who took the testimony, and reported the same, together with a statement of the accounts of the executors, to the Circuit Court. The exceptions to this report sufficiently indicate the items and omissions objected to. They were as follows :

*Plaintiff's exceptions:* 1. Because said referee should have reported that the $2,192.00 paid out on December 29th, 1879, by executors for land, was from funds really belonging to Mrs. Phœbe Y. Witherspoon and John D. Garlington ; that the land should have been transferred to said devisees, or charged for their benefit with the repayment to them of said amount and interest, and that said referee should have put said amount in Schedule B. as a payment made by said executors to said devisees.

2. In overruling each or any of plaintiff's exceptions which were overruled to introduction of testimony.

3. In allowing each or any of defendant's exceptions, which were allowed, to the introduction of testimony offered by plaintiffs.

4. In allowing each or any of the following contested items of executors' accounts as mentioned in report of referee, to wit, the third item of $506.61 ; the fourth item of $1,323.45, and the seventh item of $500.00.

5. In allowing commissions to the executors on the amounts received by them for rents of real estate.

6. In not reporting that the accounting herein was not-final, but that a large amount of choses in action and personal property of the estate were still on hand, and should be accounted for hereafter, and that the accounting of the executors on the copartnership with the estate as to Homestead Mill place and White Plains place was still open for a further accounting.

*Executors' exceptions:* 1. Because the referee fails to report that there was a balance against J. Y. Watts, as surviving partner of the testator, John D. Williams, in a farming contract on the White Plains place, of $1,176.74, for the year 1874, together with the items of balance on the same contract, for 1873, of $1,776.50, all of which counsel for executors claimed should have been excluded from their general account as executors.

2. Because the referee omitted to report the testimony upon which he reported vouchers for payment on the John G. Williams' note, $172.20, or to give the law by which he was led to his conclusions.

3. Because the referee, in his statement of account, erred in not stating his findings of fact and conclusions of law therein separately.

4. Because the referee erred in charging the items of $1,776.50 and $1,176.74, the balance for the years 1873 and 1874 respectively, against J. W. Watts, the surviving partner of the testator, John D. Williams, against the executors, when, it is respectfully submitted, these items, amounting to $2,953.24, constitute simply an indebtedness against J. W. Watts individually, but that this amount should, under no circumstances, have been charged

against William Anderson, as executor, either jointly with J. W. Watts or otherwise.

5. Because the referee erred in charging the defendants, the executors, with interest per annual balance, either simple or compound, in his statement of accounts against them.

6. Because the referee erred in not continuing the reference until the creditors of John D. Williams could be called in to establish their claims.

### CIRCUIT DECREE.

On June 25th, 1870, John D. Williams, of Laurens county, died, leaving in force his last will and testament, in which James W. Watts and William Anderson, the defendants, were named as executors, and afterwards proved the will and qualified, as will appear by reference to a copy of said will annexed to the complaint in this action, the date whereof is April 25th, 1870.

The first clause of the will directs that the debts be paid as soon as practicable.

The second clause is in these words: "I will and bequeath to my beloved Wife, Anna C. Williams, for her sole and separate use and benefit during her natural life, the house and lot in the Village of Laurens, on which I now reside, containing one hundred and twenty-two and one-half acres; also a small wood-land tract of land, on the right side of the Greenville road, adjoining lands of John M. Franks and containing about forty-eight acres; also all my silver plate, dining-room furniture and household and kitchen furniture; all three of my carriages and a pair of horses, two good mules and my riding Mare Fannie, with such other stock as she may desire to keep on the place, and such other provisions as she and the family may need, and provender for the stock on hand, as may be sufficient for their necessities for the time, and hereby give her the power and privilege of disposing at her death, of any of the plate or furniture above mentioned, to either of my daughters or grandson John D. Garlington as she may see fit, they accounting to my estate for the same as an advancement, the balance of the above Estate hereby given to her, at her death to revert to my estate for distribution as hereinafter described."

In the third clause testator recites that "having heretofore made large advancements to my son John G. Williams, which with the portion of my Estate which I now give to him in this clause, I consider to be a fair proportion thereof : I give and bequeath to my Executors hereinafter named, for his use and benefit during his natural life, my Spring Grove tract of land, including the land which I have added thereto, all lying on the west side of Mudlick Creek and supposed to contain about fifteen hundred acres, together with all the property which was on the said place when he took charge of the same; to remain in his possession and enjoyment unless efforts be made to subject the same to the payment of his debts and liabilities, and in this event to be taken charge of by my Executors to prevent and protect the same from such liabilities, and at his death to be equally divided between such child or children as he may leave surviving him at his death, or should all his children die before obtaining the age of twenty-one years, then to revert to my Estate for division as the residue of my Estate is hereafter directed, and with the provision that no more of the wood land is to be cleared up for cultivation, hereby directing my Executors hereafter named, immediately after my death to deliver and hand over to my said Son all the notes I hold on him and also all the accounts I have against him previous to 1st January, 1869, amounting to several thousand dollars in lieu of his interest in the balance of my Estate."

By the fourth clause of the will testator gave his daughters, Lucy and Phœbe, and to his grandson, John D. Garlington, his White Plains place (reserving the burial ground) and all the property belonging to said place at his death, to be kept together and managed for their maintenance, support and education, until the said grandson came of age, or if he should die before that time, until either of his said daughters should marry; then if either his grandson or either of his daughters desired it, a division of the property bequeathed in that clause might be made by sale or otherwise, as may be most desirable. And should either of his said daughters or grandson die, leaving no children or child living at his or her death, then the share of such decedent should go to the survivor or survivors.

In the fifth clause of the will testator gave to his grandson, John D. Garlington, all the books that belonged to his father.

In the sixth clause he gave to Dr. Wm. Anderson (the defendant), in trust for the use and benefit of his son, Washington A. Williams Anderson, fifteen hundred dollars, and in case of his ·death before attaining the age of twenty-one years, then to his mother, Elizabeth L. Anderson, and her children then surviving.

In the seventh clause of his will he gave to J. Washington Watts (the defendant), in trust for testator's namesake, the youngest son of said Watts, fifteen hundred dollars, but if he should die before reaching the age of twenty-one years, then the ·same to his said father, if he be then living, and if he be then ·dead, the same to be divided among the other children of the ·said J. Washington Watts.

The eighth clause of the will is in these words in part: "It is my desire to keep my Homestead in the Village of Laurens in my family; it is therefore my will and desire, after the death of ·my kind wife, that either of my daughters or my grandson John D. Garlington, take the same at a fair valuation, and if neither ·of these desire it, then it, together with all the other part of her said life-estate, be sold and divided among my said daughters and said grandson; the child or children of my said daughters ·or said grandson to represent their parent if the parent be dead."

By the ninth clause testator directs that the plantation which he purchased from the Simpsons, and his interest in the lot upon which he had erected a mill, be held by the executors for the benefit of his wife and daughters and grandson John D. Garlington, to assist in their maintenance and support, and that the arrangement· he had made with his friend and relative, Dr. William Anderson, being similar to the one which he had entered into with his nephew, James W. Watts, in reference to the White Plains place, be continued in force until the first day of January, 1875, and as long after as might be desirable or thought best by his executors; and when thought best to make a change, he gave to his daughters and grandson the same privilege to take the same at a valuation as in the case of the homestead; and should neither of them desire it, then that it be sold and

divided as in case of the residue of his estate in the eleventh clause of the will.

In the tenth clause, testator directed the Milton mill to be sold and that the proceeds of the sale be applied to the satisfaction of a note held by him on one Thomas Crowder, deceased, and Thomas H. Crowder, after first crediting the same with one thousand dollars. The balance of said proceeds to be paid, three-fourths thereof to the children of Thomas Crowder, and the remainder to Thomas H. Crowder.

The eleventh clause is in these words (as far as necessary to transcribe the same), to wit: "Having specifically disposed as I desire, I will and bequeath all the rest and residue of my estate such part thereof as I have not otherwise directed, to be sold by my executors at their discretion and the proceeds thereof to be divided as follows: One-fourth part to Col. James W. Watts, and Dr. William Anderson, in trust for the sole and separate use of my said wife during her natural life, with the power on her part of disposing of the same at her death to such persons as she may see fit; and the remaining three-fourths to be equally divided between my two daughters and grandson in equal portions." Then follow limitations over in case of the death of either of them, without leaving issue surviving, first to the survivors with limitations over, in case of the death of the last survivor without leaving issue.

In the twelfth clause of the will, testator expresses the desire that his daughters and grandson remain with his wife as long as they should see fit, and while so remaining to contribute out of their several estates their proportion of the necessary expenses of the household, and, should it become necessary to repair or rebuild any of the houses on the home place or to supply the same with stock necessary for the use of the family, the same was directed to be done by the executors out of the estate.

The thirteenth clause referred to the agreement with James W. Watts, with regard to the cultivation and management of White Plains, which testator desired to be continued until its expiration and longer if agreeable to the parties. The fourteenth clause directs how his estate should be disposed, in case of the failure of all the previous limitations. The fifteenth clau

directs that the shares of his estate which he has given to his daughters, should be held by his executors in trust for their sole and separate use and benefit.    The sixteenth clause is practically revoked by the codicil.    The last clause names his executors, and desires them to be well compensated for their services, if their legal commissions are not sufficient; desires his friends, J. Wister and William D. Simpson, as his counsel in all matters pertaining to his estate.

Testator also left of force a codicil to said will, dated June 11th, 1870, wherein he refers to the twelfth clause of his will directing his daughters and grandson to contribute out of their estates for the necessary expenditures of the household and the other directions therein in respect of the same, and directs as follows : " Now in order to make some ample provision for the maintenance of the home place and for the support and comfort of my said wife, daughters and grandson, I further will and desire my executors to supply my said home place during the life of my said wife from my estate, with all necessary provisions, to be taken from any of my plantations or my mill, and likewise to furnish all necessary stock for the place; to keep the roads, fences and houses in good order, rebuilding the same if at any time it may become necessary."

He proceeds to make the directions contained in the sixteenth clause of the will and directs that the mill be disposed of as directed in the ninth clause of the will, and that Dr. William Anderson take control of and manage the mill and be allowed whatever is right for his services.    Lastly, he directs the disinterment and removal of the remains of the members of the family, from the family grave-yard at White Plains, and their re-interment at Laurens Village Cemetery, and requests his friend Dr. John W. Simpson to take charge of, superintend and direct the same; charging the estate with all the expenses attending it, including proper compensation for himself, and directing the executors to pay the same.

Testator left surviving him a widow, Anna E. Williams; three children, Phœbe, wife of James H. Witherspoon (the plaintiff), Lucy Williams and John G. Williams, and a grandson, John D. Garlington, who were his heirs-at-law.    Some time in 1871

Lucy Williams died unmarried and intestate and John G. Williams, the defendant herein, administered on her estate.

Some time prior to April 25th, 1873, Anna E. Williams, the widow, renounced her interests under the will of her husband, and elected to take dower in the lands of the estate, and instituted proceedings to recover the same in the Probate Court of Laurens county. Under these proceedings the sum of twelve thousand four hundred dollars was assessed as the value of her dower in all the lands of her said husband, whereof he died seized, and a decree of the court in said cause directed the executors to pay her the said sum in lieu and bar of her said dower.

September 26th, 1873, the said executors commenced an action in this court against the said Anna E. Williams, John G. Williams, Phœbe Y. Witherspoon and John D. Garlington, setting forth the facts herein before stated; that the election of the widow to take dower, and the death of the daughter Lucy, had introduced important changes into the estate, giving rise to important questions as to the construction of the will and their duties thereunder, among which were, as to what portion of the estate should be sold to meet the dower assessment? To what extent Spring Grove should be subjected to the payment of dower? And what disposition should be made of the interests under the will renounced by the widow, upon which points they desired the instructions of the court.

In that action a decree was rendered by consent, bearing date October 27th, 1873, directing an appraisement of such portion of the personal property which had been bequeathed to his widow by said testator, as Phœbe Y. Witherspoon and John D. Garlington desired to take at a valuation, and the delivery of the same to them respectively upon their several receipts. That the executors have leave to sell at their discretion the balance of said personal property and also the homestead, the small woodland lot devised with it, and the mill tract near the village of Laurens, "for the purpose of meeting the dower of the said Anna E. Williams, the debts and pecuniary legacies, &c., prayed for in the complaint." It was further ordered "that the questions in the pleadings as to the proper construction of the

will, as to the rights of the parties growing out of the change in scheme, on account of the election of said Anna E. Williams to take dower, and the renunciation of her interest under said will, be reserved for the further adjudication and determination of this court, and all other equities reserved."

It does not appear that any further order was made in that cause. Under this decree the executors have sold all the lands, &c., therein authorized to be sold, except two tracts, collectively called the Mill tract, containing six hundred and forty acres, which remain unsold. They have paid the money decreed to be paid for the dower. They have had possession of the real estate described in the will, except Spring Grove, which has been in the possession of John G. Williams, and have received the rents and profits arising therefrom, or occupied them as directed by the will; but in regard to White Plains, which was rented by Phœbe Y. Witherspoon under an agreement with the executors, with the personal property thereon, from January 1st, 1876, to December, 25th, 1879, the condition is peculiar. The rent for the year 1876 was fixed at twenty-five bales of cotton, weighing four hundred pounds each; twelve and a half bales to be delivered on or before December 25th, 1876, at Clinton or Chappels depot as the executors might prefer, and the other twelve and a half bales to be receipted for by Mrs. Witherspoon as her interest under the will in the proceeds of the crop of said plantation. The said agreement was to continue after 1876, to December 25th, 1879, at the election of Mrs. Witherspoon. She has continued in possession up to the present time.

There are demands still outstanding against the estate, two in number, one of which is a suit upon a sheriff's bond upon which the testator was surety, and both are in litigation. The amount of these demands is claimed to be large, but as yet unknown.

John D. Garlington became of age October 25th, 1879.

On September 1st, 1875, John G. Williams commenced an action against the executors, setting up a claim to Spring Grove under an alleged parol gift from his father, John D. Williams, and praying that he be decreed entitled to the same, free from the trust and limitations of the will, but said action has never been brought to a hearing.

The present action alleges many derelictions and claims many liabilities against the executors, and prays that they may be required to account, and to pay the plaintiff, Phœbe, the amount due her; that the property remaining be divided under the will or sold under the direction of the court, and the proceeds distributed; that if, for the payment of debts, it be necessary that legacies and devises abate, that all abate ratably; that the executors be enjoined from further disposing of the property of the estate or receiving money due the same (alleging their insolvency), and that they pay the same into court and turn over to the custody of the court the amounts to be disbursed under the order thereof; that the legatees and devisees account for what they have each received; that all the defendants be enjoined, during the pendency of this suit, from receiving or disbursing moneys of the estate, or disposing of the property thereof, or interfering with or bringing action, or taking any proceeding against the plaintiffs, to oust them of the possession of the White Plains plantation, or the personal property received by them under their lease thereof, and for further relief.

The executors, in their answer, take issue with the plaintiffs in regard to all allegations affecting their liability, or allege circumstances in avoidance of the same. John G. Williams sets up his title to Spring Grove, as obtained under a parol gift from the testator, and adverse possession thereunder for more than ten years before his death, and claims the protection of the statute of limitations as to the personalty upon the place and the legacy of his indebtedness to his father. He also claims, as administrator of Lucy Williams, whatever may be found to be due him in that capacity. The answer of John D. Garlington raises no question with the executors and needs not to be further recited.

An order was entered in the cause at February term, 1880, enjoining the executors from selling any portion of the estate and directing the status of the estate to be maintained until the further order of the court, and directing a reference "to take testimony upon all issues in this case" and to report the same, and to state the accounts of the executors and the sums received by each legatee or devisee, with leave to report any special matter, and granting plaintiffs leave to amend by making the infant

legatees, Washington A. Williams Anderson and John D. Williams Watts, parties defendant. The referee has stated the accounts and reported the testimony on the other branches of the case. There were many exceptions to the report, and a number of exceptions to testimony admitted or rejected. In this condition the cause is before me for determination.

The exceptions to the accounts of the executors will first be considered. The referee has given no reason in his report for his decisions upon the questionable points, and this is made the ground of one of the exceptions. Certainly the law requires a judicial officer to give his reasons for his decisions, and the court can obtain but little aid from a referee upon such points unless this is done, but the report will not in this case be returned on this account.

The first and fourth exceptions, on the part of the executors, object that they were jointly charged with balances found due by J. W. Watts on the copartnership between him and the estate, which was continued, in pursuance of the provisions of the will, for some years after the death of the testator. I can see no propriety in charging Dr. Anderson, the co-executor, with this liability. The rule is, "that the actual possession and use by one of two executors, is not in law the possession and use of both, so as to attach any liability upon both." 1 *Wms. Ex.* "And an executor shall not, under ordinary circumstances, be responsible for the assets come to the hands of his co-executor." *Id.* 1292. These principles are fully recognized in our own cases. *O'Neall* v. *Herbert, Dudley Eq.* 30; *Clarke* v. *Jenkins,* 3 *Rich. Eq.* 319, &c. There are in this case no special circumstances to vary the rule. The decision of the referee in regard to the balance due by J. W. Watts, on the contract in relation to White Plains, for the year 1873, amounting to $1,776.50, and that for the year 1874, amounting to $1,176.74, whereby these balances were charged as a liability against both executors, is reversed, and it is adjudged that the same are chargeable only against J. W. Watts.

The second exception of the executors objects to the rejection by the referee, without reasons assigned, of a due bill paid by the executors to Hugh Leaman. It was given by John D.

Williams to John G. Williams, dated February 13th, 1861, and is not negotiable upon its face. It was entered in the returns as a payment to John G. Williams on a note. The payment to Leaman, or his authority to receive the money, is not questioned by John G. Williams. It should, therefore, have been allowed, unless the payment to John G. Williams would have been an error.

Testator bequeathed that all John G. Williams' notes and accounts be given up to him, " in lieu of all his interest " in the estate. No reference is made in the will to this note or any indebtedness from testator to John G. Williams, and nothing is said therein, whence it might be supposed to be the intention that this legacy should operate as a satisfaction of any demand of this nature held against the testator by John G. Williams. When the testator takes no notice of the debt or leaves the intention doubtful, the legacy will not be held to extinguish the debt. 2 *Story Eq.* 1123. Slight circumstances will be laid hold of to avoid the construction, that a legacy is to operate as satisfaction of a debt. *Hinchcliffe* v. *Hinchcliffe*, 3 *Ves.* 529. It is said to be " an absurd rule " that a legacy shall be intended as satisfaction of a debt. *Barclay* v. *Wainwright*, 3 *Ves.* 466. A negotiable note will not be held satisfied by a legacy. *Carr* v. *Eastabrooke*, 3 *Ves.* 561. In *Chancey's Case*, 1 *P. Wms.* 408, the testator had directed that " all his debts and legacies be paid," and it was held this took the case out of the rule.

So, when the legacy is given *diverso intuitu*, some particular reason being expressed as the ground of the bequest. 2 *Wms. Ex.* 932. As in this case, where the reason for the legacy is stated evidently a gratuity in lieu of his interest in the estate as heir-at-law, distributee, &c., because he had been advanced and would be made equal with his co-heirs, &c., by the provision made for him in the will. That assumed equality would be destroyed if his rights as a creditor were taken away. These principles are also sustained by our own cases. It is held in *Owens* v. *Simpson*, 5 *Rich. Eq.* 420, that an express provision to pay debts would take the case out of the rule. Here there is an express direction to pay debts.

This exception is, therefore, sustained, and it is adjudged that

the executors be allowed credit in their accounts for said payment.

3. The exceptions of plaintiffs, as to the items named in their fourth exception, is overruled. The testimony fully sustains the propriety of allowing these as credits to the executors.

4. The first exception of the plaintiffs claims that the funds used by the executors ($2,191) to purchase a tract of land, which was conveyed by Mrs. Crews to J. W. Watts, as trustee for John D. W. Watts, as an investment of the legacy bequeathed to him in the seventh clause of the will, belonged to Mrs. Witherspoon and John D. Garlington, and that the land so purchased should be held for them, or at least charged in their favor to that amount, and that the referee should have so reported. The testimony established that $800 of that sum was derived from a sale of a portion of the lands, which are collectively termed the Mill tract, disposed of by the ninth clause of the will, and also in part referred to in the codicil, and in the sixteenth clause of the will, revoked by the codicil.

In order to determine the question here presented, it is necessary to settle the order in which the legacies and devises stand towards each other, and from what sources the debts and pecuniary legacies are to be paid, and out of what property or fund the widow's dower should have been paid, and, indeed, all other questions respecting the administration and settlement of the estate. This decree is growing to such length that these important questions must be briefly determined. In the first place, it is adjudged that the dower is to be charged against the several parcels of land according to their respective values, and to be borne by devisees of lands devised, or paid out of the purchase-money of those parcels sold or to be sold, so far as such parcels may be chargeable with the same.

In *Cunningham* v. *Shannon*, 4 *Rich. Eq.* 140, Chancellor Dargan says: " Dower is a right which, inchoate during coverture, becomes absolutely vested in the wife, as an estate, on the death of her husband, and is as much beyond his control or power of disposition as her own inheritance. It not being his to give, every devise which he makes of the land, upon which the right of dower attaches, is presumed to be given subject to

the legal estate, unless the contrary appears on the face of the will in express words or by the strongest kind of implication." This is the principle—that the land is devised subject to the dower. The assessment for dower must, therefore, be paid by the devisees of the land or their proceeds, when sold. Whatever funds may have been actually employed in paying off this assessment, must be replaced by the devisees, or by the executors, out of the proceeds of land sold or to be sold, to the extent that they are liable to dower.

5. "In South Carolina, the whole estate is charged, by law, with the payment of debts; but in the absence of any special direction by the testator, certain rules have been adopted in the marshaling of assets, * * * but a testator has the right to prescribe a law for the disposition of his estate, which is obligatory upon all claiming as volunteers. The inquiry always is, Has the testator expressed an intention to have his assets marshaled in a different manner from that prescribed by law? Does there appear from the whole testamentary disposition taken together, an intention on the part of the testator, so expressed as to convince a judicial mind that it was meant, not merely to charge the estate secondarily liable, but so to charge it as to exempt the estate primarily liable?"

This is the language of the late eminent Chancellor Dunkin, delivering the opinion of the Court of Equity Appeals in *Brown* v. *James*, 3 *Strobh. Eq.* 29. I have transcribed it here because in my opinion the testator has in this case clearly expressed an intention, and has prescribed a law, which will control the question as to what legacies are first to be resorted to for the payment of debts, upon the failure of assets undisposed of specifically, and otherwise primarily liable. Of course the general rule is that personal property not specifically bequeathed, is to be resorted to in the payment of debts, before specific legacies; and specific legacies, before real estate, devised. But lands devised under a general residuary clause are liable before a specific legacy. *Warley* v. *Warley, Bailey Eq.* 397; 2 *Hill Ch.* 457.

In the first ten clauses of his will the testator here has devised and bequeathed the great bulk of his estate. I presume there will be no question that all those devises and bequests are specific,

except the pecuniary legacies bequeathed in the sixth clause to Washington A. Williams Anderson, and in the seventh clause to John D. Williams Watts, or, more accurately, in trust for them respectively. Standing alone, they would certainly not be specific. But in the eleventh clause of the will, testator evidently classed them with the other legacies and bequests, and considered them all together as a specific portion of his estate, carried out and set apart for the persons and uses therein declared. It seems to me clear that the law of this will is that the property and assets, passing under the eleventh or residuary clause, is liable for the payment of debts before any resort is had to the legacies and devises set forth and contained in the previous clauses of the will, and it is so adjudged.

In the ninth clause of the will it said in regard to the property therein devised, that in case neither Mrs. Witherspoon nor John D. Garlington desired to take it at a valuation, " then to be sold, and in either case, the proceeds to be divided as in the case of the residue of my estate in the eleventh clause of this my last will and testament." This disposition is to be considered still as specific, though to be divided as directed in regard to the general residue.

It has occurred to me that some question might be raised as to whether the property given to the widow for life reverts directly to the remaindermen when she renounced the same, or reverted to the estate until the termination of her natural life. In *Avelyn* v. *Ward*, 1 *Ves.* 420, Lord Hardwicke decided the principle when he said, he knew of no case " of a remainder or conditional termination over of a real estate, whether by way of particular estate, so as to leave a proper remainder, or to defeat an absolute fee before conditional termination ; but if the precedent limitation by what means soever is out of the case, the subsequent limitation takes place." In the *Touchstone* (452) it is said : " If one devise his land to another in fee-simple, fee-tail, for life or years, and the devisee after the death of the testator doth refuse and waive the estate devised to him, in this case, and by this means the devise is (as to him) void, and by the refusal of a particular estate, the remainder will be accelerated, and an intended remainder may be converted into an executory devise."

So it is said by Mr. Jarman (in his treatise on Wills, p. 702,) that "Where real or personal estate is given to a person for life, with an ulterior gift to B., the gift to B. is absolutely vested, and takes effect in possession, whenever the prior gift ceases or fail." So in our own case of *Lesly* v. *Collier*, 3 *Rich. Eq.* 128, it is said, "If there be a legacy to one for life, with remainder to another, which remainder, on the death of the testator would be direct and vested and not contingent, and the person intended to be the tenant for life, dies in the life-time of the testator, * * * it cannot be doubted that in such case, the legacy does not lapse, but on the death of the testator goes at once to him who, in the scheme of the legacy, was intended to be only a remainderman." According to these principles, the remaindermen, Mrs. Witherspoon and John D. Garlington, were entitled to the property devised and bequeathed to the widow for life, with remainder to them, from the time of her election to take dower, as if the devise had been directly to them; and it is so adjudged.

It will follow from what has been said, that the legacy to John D. W. Watts was not payable out of the proceeds of the lands devised to Mrs. Williams for life, and that to the extent to which that fund was so employed, compensation must be made to Mrs. Witherspoon and to John D. Garlington to the extent that their interests were affected by such payment. As already said, the property whose proceeds were applied in this manner was portion of that described and disposed of by the ninth clause of the will, and mentioned also in the codicil and in the sixteenth clause of the will. In the contingency that after the termination of the arrangement with Dr. Anderson, neither Mrs. Witherspoon nor John D. Garlington should desire to take the land at a valuation, the same was directed to be sold and the proceeds to be divided as in the case of the residue of the estate under the eleventh clause of the will.

By that clause it was directed that the rest and residue of the estate should be sold by the executors and the proceeds divided as follows: "One-fourth part to Col. James W. Watts and Dr. William Anderson, in trust for the sole and separate use of my said wife during her natural life, with the power on her part of disposing of the same to such persons as she may see fit, and the

remaining three-fourths to be equally divided between my two daughters, Lucy and Phœbe, and grandson, John D. Garlington, so as to give my said daughters and grandson equal portions," &c., with a provision that on the death of either without leaving issue, the share of the party so dying to be divided among the survivors. There is here no disposition of the one-fourth bequeathed to the executors, in trust for Mrs. Williams, for life, with the power in her of disposing of the same at her death. Upon her renunciation of the bequest this provision for her benefit was no longer operative, and the fund which was the subject of it became assets in the hands of the executors, undisposed of by the will, as in the case of a lapsed legacy. *Coffin* v. *Elliott,* 9 *Rich. Eq.* 244.

As to three-fourths of the sum paid by the executors, from the proceeds of the land sold, which were distributed under the ninth clause of the will, "as in case of the residue," the plaintiff, Mrs. Witherspoon, and the defendant, John D. Garlington, are entitled to be re-imbursed out of the estate, and if that be not sufficient, then out of the land purchased by the executors with that fund, in part, for John D. W. Watts. The payment was authorized by the decree which authorized the sale for that purpose, but the rights of the parties were reserved.

The proceeds of the Milton Mills tract, the legacy in favor of the Crowders having failed, fall into the residue.

The devisees are entitled to rents and profits, as to the property devised to her for life, from Mrs. Williams' renunciation. As to the Simpson lands, from the termination of the arrangement made by the testator with Dr. Wm. Anderson, directed by him to be continued until January 1st, 1875, and as long after as should be desirable. As to White Plains, from the termination of the like arrangement with James W. Watts, as provided in the thirteenth clause of the will. As to Spring Grove, from January 1st, 1871. The personal property on these two last named places having been blended with them, and specifically devised with them as a whole, are to be considered as a part thereof.

The pecuniary legatees are entitled to interest from the expiration of one year from the death of the testator.

Mrs. Phœbe Y. Witherspoon and John D. Garlington are to be severally charged with the sums expended on their maintenance and education.

This brings me to the questions made by the answer of John G. Williams, involving the title to the Spring Grove plantation. I am unable to conclude that the claim is established. Testator placed his son John G. Williams in possession of Spring Grove in 1858, and he has remained continuously in possession ever since. Some time after he went into possession, and before the war of secession, testator proposed to his said son, to substitute White Plains, a more valuable place, for Spring Grove. Testator was desirous of getting his son away from Spring Grove on account of certain associations in that neighborhood which he deemed injurious to him. This proposition, though evidently advantageous to him, was rejected by John G.

On another occasion, about the year 1858, John G. Williams was about erecting a building for a residence on Spring Grove, and he and his father differed as to the site of the house. Testator closed the dispute by saying to his son, " It is your place and you can do as you please about it," and accordingly John's location was adopted. These buildings and other improvements were made, in part, by the assistance of the testator, who furnished workmen and some material. Fencing and other improvements were made on the place by John G., who used and cultivated it as if it were his own, from the time he entered into possession. In 1859 or 1860 testator said to J. F. Leak, a witness, who went to him to rent a portion of the land : " I have given all on the other side of Mudlick creek to my son John, and have nothing to do with it." On other occasions he spoke of Spring Grove as John's place, and said he had given it to him. John G. Williams also has in his possession the title-deeds and original grant of the Spring Grove lands, but it does not clearly appear when or how they came into his possession.

On the other hand, there is no evidence of the distinct assertion, by John G. Williams, of an independent and adverse title contrary to the will, until he filed his complaint, setting up his claim to such title, in September, 1875. He returned no real estate for taxation, and paid no taxes on Spring Grove until after

testator's death.   Neither of the executors, nor the members of the family, ever heard of such a claim on the part of John G. Williams, until after testator's death.   The place was appraised as part of the estate of testator without objection.   John G. Williams was a party to the two suits hereinbefore mentioned, that for dower, and the other for the sale of property to pay the dower, and in neither case did he deny that he held Spring Grove under the will, or assert any independent title thereto.

Considering all these circumstances in connection with the devise of Spring Grove by the testator, I find evidence that satisfies me that the possession of John G. Williams of the Spring Grove plantation, and other property connected with it, during the life-time of his father, was not adverse, but permissive, and understood to be in subordination to testator's title and his right to devise the same, and to define the intent and nature of the estate which it was the intention of both that he should take in the same.

Furthermore, I am satisfied that if the title had been such as now claimed by John G. Williams, the circumstances were such as to require him to elect between accepting the benefits of the will and claiming against it, renouncing those benefits.   This election he made when he accepted the surrender and cancellation of his indebtedness to the estate under the provisions of the will, which, with the other benefits derived from the estate, and the advancements previously made to him, his father considered, made his equal with the other children of the testator.   The remaindermen under the devise of Spring Grove would be entirely disappointed, if he held that place by an independent title.   "It has been holden for an established principle of equity, that when a testator, by his will, confers a bounty on one person, and makes a disposition in favor of another, prejudicial to the former, the person thus prejudiced shall not insist upon his old right, and at the same time enjoy the benefits conferred by the will."   *Melchor* v. *Burger*, 1 *Dev. & B. Eq.* 634.

John G. Williams accepted the provision made for him in the will, with a full knowledge of the facts.   He was a party to the proceedings for dower, and allowed the amount assessed for the same on Spring Grove to be paid or provided for out of the estate,

and as a portion of the lands whereof testator died seized, and which he devised by his will. He was party to a suit, under which, with his consent, other lands devised by testator were sold to pay this dower, he having no interest whatever in such lands. I am compelled, under the circumstances, to conclude, that if this were a case of election, his conduct amounts to a deliberate choice to accept the provisions of the will as absolute and to abide by them. Having done this he cannot recant. *Buist* v. *Dawes*, 3 *Rich. Eq.* 301. It is there said that whenever an election has been made, either at law or in equity, it is a satisfaction of the alternative right, and that the party will not be allowed to retract, unless upon grounds of equity shown to exist, inherent in the circumstances. There are none such here.

The conclusions which have been announced, require that the dower be paid out of the specific lands upon which it was assessed, or out of their proceeds, if sold; that to the extent that other funds have been employed for that purpose, compensation be made by the owners of the land, or the persons entitled to the proceeds of land sold. That, if required for the payment of debts, the legacies and devises abate, after the exhaustion of property and assets not disposed of by the will in consequence of lapse or renunciation of the widow, resort shall first be had to the property and assets which fell into the residue of the estate and passed under the eleventh clause of the will. That, if necessary that the other devises and legacies abate, they contribute equally, *pro rata*, without any preference between them according to their value at the time when the right of possession or of payment accrued. That, if necessary, the residuary legatees contribute to the payment of the pecuniary legacies. That in all cases compensation shall be made according to the principles herein declared, when funds have been applied contrary to these principles.

As to the demands of the plaintiffs that the executors be suspended from their office and the estate taken out of their hands, no case has been made which would authorize the court to interfere with the wishes of the testator in this respect.

I do not perceive the propriety of withholding the enjoyment of the property devised and bequeathed to the plaintiffs, Mrs.

Witherspoon and John D. Garlington on account of the out-
standing debts.   There has been sufficient time to ascertain and
discharge them.

It is therefore ordered and adjudged that the lands of the tes-
tator, John D. Williams, remaining unsold, which were, directed
to be sold by the decree of the court heretofore made for the
purpose of paying the dower and the pecuniary legacies, be sold
by the master on the first Monday in February next, or some
convenient salesday thereafter, at public auction, after first duly
advertising them on the terms following, to wit, one-third cash,
the balance on a credit of one and two years, to be secured by
the bond of the purchaser and a mortgage of the property, and
that the same be sold in such convenient parcels as may best pro-
mote the interests of the estate.   That the proceeds of said sale
be held by the master subject to the provisions of the will and
the provisions of this decree, to be paid out under the order of
this court.   That a writ of partition do issue to commissioners
to be named therein, directing them to divide the White Plains
plantation, with the personal property of the estate thereon
belonging to the estate, into two equal parts, respect being had
to the value thereof, and to assign and allot in severalty to the
plaintiff, Phœbe Y. Witherspoon, and to John D. Garlington
one equal share or moiety thereof, according to law and the
usage and practice of this court.   That the said property, not-
withstanding such partition, stand charged in the hands of the
said parties with the payment of the debts of the estate, to the
extent to which the same may be liable to contribute according
to the principle herein adjudged, and also liable for and charged
with the payment of such sums as may be adjudged against the
parties to whom the same is allotted, in order to adjust the
accounts between the parties to this action.   That it be referred
to the master to restate the accounts of the executors, and be-
tween the parties, according to the requirements of this decree
and the principles herein announced.   That it be referred to the
master to take testimony and report a scheme for the payment
of the debts of the estate, ascertaining what funds are available
therefor, and how much thereof is necessary to be set aside for

that purpose, and that he report a scheme for the final settlement of the estate in accordance with this decree.

It is ordered and adjudged that the exceptions to the rulings of the referee as to the admissibility of the testimony of A. Y. Miller and of C. M. Miller, and also as to the admissibility of the record marked Exhibit A., be sustained. The other exceptions to the evidence are overruled. It is to be remarked here that those exceptions were not specific, but so general as to throw upon the presiding judge the labor of searching through the whole case to ascertain what objections were included in the general terms employed. Nor were they made more specific in the argument; under these circumstances they might have been disregarded by the court.

It is ordered that the costs of this suit be paid by the executors out of the estate of the testator.

It is not intended that the executors should await further proceedings under this judgment before proceeding with their duties, but they are ordered to proceed to realize and collect the assets of the estate and to settle the debts and the legacies as far as they may have assets for that purpose, observing the order of such payments and the proper application of funds as adjudged herein. And all restraining orders heretofore issued, prohibiting such collections and payments, are hereby revoked and overruled, or to that extent modified.

From this decree all parties gave notice of appeal to the Supreme Court. The plaintiffs and John D. Garlington appealed upon exceptions alleging error:

1. In decreeing that the defendant executor, William Anderson, was not jointly with his co-executor chargeable with the items of $1,776.50 and $1,176.74 charged against him in the report of the referee.

2. In overruling plaintiffs' exceptions to the report of the referee as to allowance to executors of commissions on the rents received by them.

3. In not sustaining plaintiffs' exceptions to the referee's report, that the referee should have reported that the accounting herein was not final, but that a large amount of choses in action, as well as other property of the estate, were still in execu-

tors' hands, and should be accounted for hereafter, and that the accounting of the executors on their copartnership with the estate as to the White Plains and Mill places was still open for a future accounting.

4. In not requiring the executors to give bond for the faithful discharge of their duties, or, failing in that, in not putting the assets of said estate in the hands of a receiver.

5. In holding that by renunciation of devise by testator's widow, there was a lapse in the devise of one-fourth of the land mentioned in the ninth clause of the will; whereas, it is respectfully submitted that his Honor should have held that by said renunciation, the whole thereof went to Phœbe Y. Witherspoon and John D. Garlington.

6. In not holding that the land purchased for John D. Williams Watts, was charged in favor of Phœbe Y. Witherspoon and John D. Garlington, with the sum of $2,192 with interest from the 29th December, 1879.

7. In holding that, if necessary, the other devises and legacies abate, and that they contribute equally *pro rata* without any preference between them, according to their value at the time when the right of possession or of payment accrued.

8. In not holding that the specific devises and legacies in favor of Mrs. Phœbe Y. Witherspoon and John D. Garlington should first be paid in full before any payment could be made towards the pecuniary legacy in favor of Washington A. Williams Anderson and John D. Williams Watts.

9. In directing a sale of the mill tract of land before it was ascertained that any debts were owing by the estate, or that the funds in the hands of the executors were insufficient to pay the same.

10. In not decreeing that the value of the dower of testator's widow in the Spring Grove tract of land, together with the interest thereon from the time of testator's death, should be paid by John G. Williams to Phœbe Y. Witherspoon and John D. Garlington, and that the same was a lien or charge upon the life-estate of the said John G. Williams in said tract of land.

11. In not holding that the plaintiffs and John D. Garlington are entitled to all the rents in their hands specifically devised

to them, and also of least three-fourths of the rents of the real estate specifically devised to them under the will from the death of testator until the election by the widow to take dower in the real estate of testator.

12. In not holding that Phœbe Y. Witherspoon and John D. Garlington were entitled to rents of all the real estate not specifically devised until the actual sale of said real estate.

13. In not holding that Lucy has no estate under the testator's will as claimed by John G. Williams.

14. In not holding that the plaintiffs, Phœbe ·Witherspoon and John D. Garlington, were entitled to the —— bales of cotton rents in hand of the executors at time of said decree.

John G. Williams' exceptions are as follows:

1. Because the evidence shows that this defendant had held Spring Grove adversely under parol gift from his father, John D. Williams, for more than two years prior to his death, and that defendant had not estopped himself from setting up this title. His Honor erred in not so finding.

2. Because this defendant is not bound to pay the assessment in lieu of dower in Spring Grove, but it should be paid by executors out of the estate devised and bequeathed to the widow, in lieu of which she elected to take dower. His Honor erred in not so finding.

3. Because the defendant, as administrator of the personal estate of Lucy Williams, deceased, is entitled to an account by the executors of the rents and profits from the estate of John D. Williams, deceased, from his death to hers, and to receive one-third thereof, after deducting the amount expended for her support. His Honor erred in not so finding.

4. Because this defendant is entitled, as administrator as aforesaid, to one-third of the proceeds of sale, and assignment of the homestead and personal property thereon, under the provisions of the second and eighth clauses of John D. Williams' will. His Honor erred in not so finding.

5. Because said decree is in other respects contrary to the law and evidence.

The infant defendants, by their guardian *ad litem,* and the executors, excepted to said decree:

1. Because his Honor erred in holding that the sum of $800 paid for the purchase of a tract of land for J. D. W. Watts, was derived from the proceeds of the sale of a portion of the lands of the testator known as the Mill tract, and sold to William Mills.

2. The defendant executors, and B. W. Ball, guardian *ad litem*, respectfully submit that his Honor erred in not holding that, the property devised to the life tenants, and conditionally to certain devisees, as referred to the residuary clause to pass thereunder, should abate with the property passing under the residuary clause.

*Messrs. J. S. R. Thomson, James Farrow*, for plaintiffs.

*Mr. J. W. Ferguson*, for J. D. Garlington.

*Mr. J. J. Norton*, for J. G. Williams.

*Messrs. Holmes & Simpson*, for executors.

*Messrs. Ball & Watts*, for executors, J. G. Williams, and the infant legatees.

May 12th, 1883. The opinion of the court was delivered by

MR. JUSTICE ALDRICH. I have been so continuously engaged since the hearing of this case and *Pope* v. *Mathews*, that I have not had time to prepare the opinions. My circuits last year were the Eighth, First and Second, which are three of the largest in the State; the business had accumulated and the chambers business on my own circuit was more than usually pressing. As I think my first care is to my circuit duties, I have not had the time to devote to the extra call of the Supreme Court, before now.

The appeal from the exhaustive decree of Judge Kershaw, who heard the cause, presents several interesting questions, which he has so clearly stated and discussed that it will not be necessary to encumber this opinion by a statement of the same.

The first question to which the learned judge addresses himself, is the balance due by J. W. Watts, which is charged by the

referee to both executors, Watts and Anderson. Undoubtedly the rule is, that one executor shall not be responsible for the assets which came into the hands of his co-executor. This is a question of fact, and the Circuit judge, after a full hearing and a mature consideration of the evidence and argument, has decided that it is properly chargeable only to the executor J. W. Watts. I see no reason to dissent from his conclusion of law and fact. See Circuit decree and authorities there cited.

From the evidence, it does appear that there are assets still in the hands of the executors, and there should be an accounting for the balance yet to be administered. It is so ordered.

Next, as to the appointment of a receiver. When a testator, in the most solemn act of his life, deliberately selects two of his friends to act as his executors, his wish is to be regarded, and the appointment he thus makes is not lightly to be set aside. He does not select them because of their ability to respond, but for their integrity and the trust and confidence he has in their friendship and honor. In this case, the testator well knew that these gentlemen were in moderate circumstances, if not insolvent; that the ample estate he was entrusting to their charge, if wasted, would be irrevocably lost and his bounty to his wife and children defeated. With these facts before him, he trusts them with his all, in full faith and confidence that these objects of his love and bounty will not be defrauded by his life-long, trusted friends. Are we to close our ears to this voice from the grave, and say, "You have made a mistake; your friends are not to be trusted," and thus condemn the judgment of the dead and cast a reproach upon the living? An executor may commit errors in his accounts, make mistakes in his construction of the will; these the court will correct, but will not remove the executor unless there is willful misconduct, waste, or improper disposition of the assets, as is said in *Wms. Ex.*, and approved in our own court, in *Stairly* v. *Rabe*. The decree of the presiding judge is sustained.

Testator died in 1870. In April, 1873, two years and ten months after, the widow, Mrs. Anna E. Williams, renounced her interest under the will, and elected to take her dower. The proceedings in dower were had in the Probate Court, and the executors directed to pay her $12,400, the assessed value of the

dower. The only question here is, How is this dower to be assessed? Dower being that estate which the wife has in the lands of which her husband was seized during coverture, it seems to me there can be no question she is entitled to have it assessed in each particular tract of land of which the testator was seized. And if, instead of assigning her the land, one-sixth of the value thereof is admeasured to her, as in this case, it follows that each tract must contribute its proportion of value. For as, if the land be assigned, she takes one-third, for life, in land, that is, the land from which it is admeasured, so, when money is assigned, the land which the money represents is the land out of which the money is to be raised.

The moment the widow renounced her interest under the will, she stood as much a stranger thereto as if she had not been mentioned in that instrument. She was entitled to her legal estate and entitled to it out of the land, no matter who is in possession, or how long and for what consideration, before his death, the husband had aliened it. It makes no difference what disposition the testator has made, he could not divest her of her legal estate, favored by the law, by giving her a legacy, and, when she renounced the legacy, the only way in which she could receive her dower was out of each separate tract of which he had been seized; or, if the admeasurement be in money, then the land representing the money is liable therefor. The Circuit judge is right in ordering, "the assessment for dower must, therefore, be paid by the devisees of the land or their proceeds, when sold. Whatever funds may have been actually employed in paying off this assessment, must be replaced by the devisees, or by the executors, out of the proceeds of land sold or to be sold, to the extent that they are liable to dower." And this is manifestly the rule, for if the dower be paid out of the general estate, it may absorb the assets and thus defeat creditors and specific legatees.

The next question is, Are the legacies in trust for Washington A. Williams Anderson and John D. Williams Watts general or specific? If the clauses in the will in which these legacies are made stood alone, undoubtedly they would be general. But the will is the law of the case. Now, what did the testator

intend? There was no doubt in his mind that each of these boys would receive every cent of the bounty he intended for them, as evidence of his affection for the sons of his trusted friends, who had named them after his deceased son and himself. He was a man of ample means, had an estate that far exceeded his pecuniary liabilities. In disposing of it, he bequeathed the great bulk of all he possessed in the first ten clauses of his will. Then, to show the nature of these bequests, how he regarded and intended them, he calls them specific legacies, by using this emphatic language, "having specifically disposed."

It is the province and the rule of the courts to give effect to every clause of a will, and always to carry out the intent of a testator, when that intent can be ascertained. That he intended them to have this pecuniary legacy, is clear; that he knew there was ample property to pay, is equally clear; but, to make his bounty and his meaning certain and unfailing, he uses the significant expression, "specifically disposed." The testator was a man of large business capacity, an educated gentleman, a "pretty good lawyer," as he is described. Is it to be supposed that such a man used the expressive words, "specifically disposed," at random, without a purpose? I think not. He intended to make those legacies specific, and that the youths should be the recipients of his bounty, beyond a peradventure. The Circuit judge is herein sustained.

The last important question is as to the Spring Grove place. Did John G. Williams have title to this tract of land? The testimony is so full and the reasoning of the decree so conclusive, that it is unnecessary to enlarge on this topic. It is very clear the testator never regarded the land as the property of his son, and never intended it to be subject to his creditors. His wish to induce his son to remove from the place, his disposition of it in his will, is conclusive that he did not suppose he had given the land to John G., or that he had acquired title thereto. And John G. knew that as well as his father.

These are the main points in the case. The other questions are satisfactorily disposed of in the Circuit decree.

The appeal is dismissed.