HEARD. APRIL TERM, 1876.

## GATES *vs.* WHETSTONE.

An executor held not to be liable for money of the estate drawn by his co-executor out of the hands of the factors of the estate.

An executor is not liable for the acts of his co-executor to which he has not contributed in some direct and active way.

Whatever control an executrix acquires over the estate by virtue of her office vests in her husband, on their intermarriage, to the same extent as held by her.

Each of several executors represents the estate and has the right to receive funds without the concurrence of his co-executors.

Where there is no evidence to show that parties to notes due the estate were of doubtful solvency, the executor who had them in his hands and made no effort to collect them is liable for the amounts due thereon.

BEFORE REED, J., AT ORANGEBURG, FEBRUARY, 1875.

This was an action by William B. Gates, J. C. Gates and Alice M. Irick, infant children of Christian A. Gates, deceased, by their guardians *ad litem,* and by Laban A. Irick, husband of the said Alice M. Irick, against William C. Whetstone, as executor of the last will and testament of the said Christian A. Gates, deceased, and John J. Jackson and Barbara E., his wife, for an account. The action was brought October 3d, 1871, and the case made is, briefly, as follows:

Christian A. Gates died in April, 1861, leaving a will, of which he appointed William C. Whetstone executor and Barbara C. Gates, his wife, executrix, and devised and bequeathed his estate, real and personal, to his wife, Barbara E., and his three children, William B. Gates, J. C. Gates and Alice M. Gates.

Barbara E. Gates, the widow of testator, intermarried with John J. Jackson on the 11th day of August, 1863. She died in February, 1872, and Laban A. Irick administered on her estate. Alice M., the daughter of testator, intermarried with Laban A. Irick in November, 1867. She died in August, 1872, and Laban A. Irick administered on her estate.

The testator had some cotton on hand at the time of his death, which was shipped by his widow to Pelzer & Rogers, factors of the estate in the city of Charleston. In the years 1862 and 1863, a considerable amount of cotton was made by the widow in her own right, which was also shipped by her to the same factors and sold by them.

On February 18th, 1866, Pelzer & Rogers paid to the defendant, Jackson, $1,500 of the proceeds of the sales of the cotton that had been shipped to them, and one of the questions made in the case was whether the executor, William C. Whetstone, was liable for the amount thus received by Jackson. Much testimony was given upon the question whether the amount paid to Jackson arose from the proceeds of the cotton on hand at the death of the testator, or whether it arose from the proceeds of the cotton made by the widow after his death. A Referee, to whom the accounts of the executors had been referred, reported, as his conclusion of fact, that the money paid to Jackson arose from cotton made by the widow after the testator's death, and he held and so reported that the executor, William C. Whetstone, was not liable to account for it. To the report on this point the plaintiffs excepted.

It further appeared that the testator left a number of notes, which went into the hands of his executor, and that they were all collected by the executor except three—one for seventy dollars given to the testator by Lewis Rust, and two, for $500 in the aggregate, given to him by T. M. Wannamaker. There was no evidence that Wannamaker and Rust were insolvent, nor was it shown that any effort had been made to collect their notes. The Referee reported that the executor was liable for the amount of the three notes and he excepted to the report.

His Honor the presiding Judge sustained the exception of the plaintiffs to the Referee's report. His conclusion of fact from the testimony reported by the Referee was, that the cotton which produced the money paid to Jackson was cotton belonging to the estate of testator, and he held that the executor was liable for it. He sustained the report of the Referee as to the three notes of Rust and Wannamaker, and held the executor liable for them.

The executor, William C. Wannamaker, appealed.

*Hutson & Hutson,* for appellants.

*Izlar & Dibble,* contra.

July 26, 1876. The opinion of the Court was delivered by

WRIGHT, A. J. We have carefully examined "the voluminous testimony" submitted, and, looking at it in the different lights in which the respective counsel in the arguments have regarded it, do

not find much difficulty in attaining a conclusion on the facts entirely satisfactory to ourselves.

The first ground of appeal on the part of W. C. Whetstone (one of the defendants below) submitted error in so much of the decree as finds that the cotton in the hands of the factors, from proceeds of which, on the 18th of February, 1866, a payment of fifteen hundred dollars ($1,500) was made by them to J. J. Jackson, was a part of and belonged to the estate of the testator, C. A. Gates, " not being the profits accruing from such estate during the widowhood of Mrs. Barbara Gates," with whom the said Jackson, in August, 1863, intermarried.

While we agree with the Circuit Judge as to the right of property in the said cotton, we do not concur in the legal consequences which he deduces from it as affecting the payment of the said money to Jackson.

We do not perceive upon what principle Whetstone, the executor, can be made liable for the receipt by the husband of the executrix of money found by the decree to belong to the estate which they both represented. It is true that if an executor, of his own will, turns over to a co-executor a fund in his hands belonging to the estate of his testator, or by his act removes it from his own sole control and subjects it to the common control of himself and his co-executor, he will, in the language of O'Neall, J., in *Administrators of Johnson* vs. *Johnson*, (2 Hill Ch., 288,) " be generally responsible for its administration." The whole scope of the English and American authorities referred to in the opinion of the Court in that case and the decision itself extend the doctrine no farther.

In this State the Courts have not held an executor liable for the acts of his co-executor to which he has not contributed in some direct and active way, so as by his interference to afford not only countenance but co-operation. Such will be found to be the result on an examination of all the cases where the point has been brought into discussion. In *Lenoir* vs. *Baxter*, (4 DeS., 65,) it was held " that executors and administrators are not liable for each other's acts unless there be connivance or gross negligence." To the same effect is *Knox* vs. *Picket*, (*ibid*, 92.) In *O'Neall* vs. *Herbert*, (McM., Eq., 497,) Harper, Chancellor, delivering the opinion of the Court, said: "The general rule of this Court is, that one executor is not liable for the assets which come into the hands of his co-executor

unless under particular circumstances, such as having paid them over to him, having joined in a misapplication of them, or having joined in a receipt by which he enables him to receive them." In *Gayden* vs. *Gayden*, (*ib.*, 435,) the same principle was announced, and on the hearing of the appeal, after the case had been again tried on the circuit, the same Chancellor, pronouncing · the opinion of the appellate Court, at page 144, said: "It is said in the former opinion of this Court that one administrator is not liable for the acts of another in which he did not concur. As this seems to have misled, and perhaps was calculated to mislead, the parties, we have thought it proper to give the subject a full and thorough examination. In many authorities, as well as in the case of *O'Neall* vs. *Herbert*, referred to, it is expressly held, both with regard to executors and administrators, that they are not liable for each other's acts. Though at law both may be jointly liable on their bond, yet this Court discriminates and charges each with his own proper defaults."

- In *Atcherson* vs. *Robertson*, (3 Rich. Eq.,) Chancellor Dunkin, delivering the opinion of the Court, at page 137, says: "If an executor, having received funds of the estate, pays or delivers them over to his co-executor, or joins in a misapplication of them, or joins in a receipt which enables his co-executor to receive them, he may be made responsible; but the general rule of the Court, as declared in *O'Neall* vs. *Herbert*, is ' that one executor is not liable for the assets which come into the hands of his co-executor, and the same rule was applied to joint administrators in *Gayden* vs. *Gayden*.

In *Clark* vs. *Jenkins*, (*ibid*, 341,) Chancellor Wardlaw, delivering the opinion of the Court, said: . "Every executor has a several right to receive the assets of the estate, and he who receives is exclusively answerable for the misapplication of them, unless his co-executors have contributed to enable him to get possession of them, or acquiesced in his appropriation of them, contrary to the trusts of the will, knowing of such misapplication."

Whatever control the executrix acquired over the estate by virtue of her office vested in Jackson on their intermarriage to the same extent as held by her.—1 Williams on Executors, 788; 2 *ibid*, 827. When the cotton was in the hands of the factors, it was held by them "to the credit of the estate of C. A. Gates." Each of the executors had a right to draw against it, and an order for its pay-

ment did not require the signature of both.— *Gage* vs. *Administrators of Johnson*, 1 McC., 492. The children were all minors, without guardians, and if Jackson neglected any duty in relation to the money which he received, it was in not investing it in some good and valid security. He and Whetstone stand in the same relation to the money drawn by each from the factors of the cotton proceeds. Whetstone could have no more compelled him to pay to him whatever sum he so received than he, Jackson, could have required Whetstone to account to him for the funds which he had drawn from the same source. No act of Whetstone is shown which contributed to the payment of the money to Jackson, and his mere passive course in withholding his interposition is not enough to render him responsible.

In regard to the notes due the estate, and uncollected, there was no evidence to show that the parties were doubtful, much less insolvent, and the consequence of their loss must fall on the executor, who, having them in his hands, made no endeavor to realize the amounts on them. We agree with the Circuit Judge in overruling the exception of the plaintiffs as to so much of the report of the Referee as recommends that the executor shall not be charged with the one hundred dollars ($100) in the account of 1867, the price of a horse then sold by him, for the reasons given by the Referee in his report. We do not see why the costs of the case should be thrown on the estate. Except as to those of Jackson and wife, which must be paid by them, they must be borne by the appellant, Whetstone.

The case is remanded to the Circuit Court, with leave to the plaintiff, if they desire, to take an order against the said Jackson, for an account of the fifteen hundred dollars ($1,500) received by him from proceeds of the cotton, with interest, and for any other assets of the estate which may have come to his hands, and for any other orders necessary to give effect to the judgment of the said Court hereby and herein modified.

*Moses*, C. J., and *Willard*, A. J., concurred.