10506

SMITH v. HEYWARD *ET AL.*

(104 S. E. 473.)

1. Wills—Right to Remainder Vested at Death of Testator.—The remainder of a devise "to my husband, H., for the term of his natural life," certain property " * * * unless he marries again, when it is to become, without division, the property of J.," vested in J. at

10—S. C. 115.

the death of the testatrix the right to the remainder; possession alone being postponed.

2. WILLS — PERSONALTY DID NOT PASS UNDER DEVISE OF PROPERTY; "TRACTS."—Personal property did not pass under a devise of "the property on Ashley River called Middleton place, and the adjoining tracts;" tracts referring only to land, and not to personalty situated thereon.

3. PERPETUITIES—DONATIONS IN PERPETUITY VOID EXCEPT TO CHARITY.— Donations by will of property in perpetuity, except for charitable uses, are void, as against public policy.

4. PERPETUITIES—BEQUEST FOR UPKEEP OF PRIVATE CEMETERY NOT FOR CHARITY.—A bequest of property for the upkeep in perpetuity of an estate was not a bequest to charity, although there was a private cemetery on the place.

5. WILLS—BEQUEST TOO VAGUE TO CREATE A TRUST.—A bequest, "whatever money or bonds remain after my legacies have been deducted, I desire that the funds shall be divided into two parts, one-half to keep up M. place, house and garden," etc., *held* too vague and indefinite to be enforced as a private trust.

6. CHARITIES — BEQUEST PASSED TO ASYLUM FOR BLIND OUT OF CITY UNDER BEQUEST TO ASYLUM IN CITY.—Under a bequest of property "to the asylum for the blind in Spartanburg," the legacy went to an asylum for the deaf, dumb, and blind outside of, but near, the city; there being no asylum for the blind in the city.

7. WILLS—DIAMOND-STUDDED WATCH PASSED UNDER BEQUEST OF "JEWELRY," AND NOT UNDER BEQUEST OF "DIAMONDS." — Under a will bequeathing the diamonds of the mother of testatrix to one person and testatrix's jewelry to another, a watch studded with diamonds *held* to pass as "jewelry" and not as "diamonds."

8. WILLS—ANNUITY GIVEN BY WAY OF LEGACY.—An annuity may be given by way of legacy.

9. WILLS — ANNUITY TAKES PRECEDENCE OVER RESIDUARY LEGACY.—A simple bequest of an annuity will ordinarily take precedence over a residuary legacy.

10. WILLS — RESIDUUM OF MONEY, BONDS, AND MORTGAGES IN BEQUEST INCLUDES PROPERTY ADDED IN ADMINISTRATION. — A residuum of "money, bonds or mortgages" in a bequest *held* to include, not only property of that kind on hand at the death of testatrix, but such as was on hand at that time, plus such as might be added thereto in the course of administration.

11. WILLS—INTENTION TO DIE ENTIRELY TESTATE CANNOT VARY CONSTRUCTION.—The fact that testatrix did not intend to die intestate as to any of her property cannot vary the construction of the will,

and cannot supply the place of an actual disposition expressed or reasonably to be implied.

12. WILLS—INTENTION MUST BE FOUND IN WORDS IN WILL.—The intention to which effect may be given in construing wills must be found in the words used by the testator, as otherwise the statute which declares that wills must be in writing would be violated, and previous declarations of testatrix of her intentions are incompetent to show intention.

13. EXECUTORS AND ADMINISTRATORS—TRUSTS—DISSENSION AMONG EXECUTORS OR TRUSTEES NOT GROUND FOR REMOVAL.—The mere fact that executors or trustees do not or cannot agree as to the administration of their trust is not sufficient ground for the removal of one or all of them and putting the estate into the hands of a receiver, unless the dissension is carried to the extent of causing injury or loss to the estate, actually or reasonably to be apprehended.

14. EXECUTORS AND ADMINISTRATORS—COEXECUTOR ENTITLED TO RETAIN CUSTODY OF SECURITIES IN POSSESSION.—Where there are coexecutors, each has the right to the custody and control of the securities, and, since more than one cannot have the actual manual custody thereof at the same time, the one who has that custody is entitled to retain it.

15. EXECUTORS AND ADMINISTRATORS—INNOCENT COEXECUTORS NOT LIABLE FOR DEFAULT.—One executor will not be held liable for the default of another, unless he contributes to it in some way by some such negligent act or omission as will warrant the inference that he countenanced, connived at, or acquiesced in it, or negligently failed to take steps to prevent it after knowledge of the danger of it.

Before MAULDIN, J., Greenville, July, 1919.   Modified.

Action by Robert T. Smith, as Executor of Elizabeth M. Heyward, Deceased, against Julius H. Heyward, as Executor of Elizabeth M. Heyward, Deceased, as Guardian, etc., *et al.*   From judgment for plaintiff, the defendants, Julius H. Heyward, as executor, etc., and Henry Middleton, appeal.

The decree of Judge Mauldin, on Circuit, is as follows:

Decree of Judge Mauldin: This case, which involves the construction of the will of Mrs. Elizabeth M. Heyward, deceased, and also a controversy between the two executors who have qualified, came on for a hearing before me at the Summer term of this Court. The cause is properly at

5—a. s. 2, 115.

issue, and counsel for all interests appeared and were heard.

The first matter for consideration relates to paragraph 11 of the will, which reads as follows: "I direct that my half interest in the Greenville dwelling house (530 Washington street) be sold as soon as it will bring the sum of $15,000 or more, and the money invested for the purpose of paying my legacies, debts, etc."

It seems that the other one-half interest was owned by Mr. Julius H. Heyward, the husband of the testatrix. He instituted proceedings for partition, and under these proceedings the dwelling house was sold under the decree of the Court, realizing for the testatrix's interests the sum of $4,150. I hold that this fund is applicable to the payment of debts first, and then legacies, and anything remaining would pass under the last clause of paragraph 12 of the will.

The construction of the twelfth paragraph is the next matter to be considered. This paragraph reads as follows: "I will and bequeath to my husband, Julius H. Heyward, for the term of his natural life, the property on Ashley River called 'Middleton Place' and the adjoining tracts, unless he marries again, when it is to become, without division, the property of my cousin, J. J. Pringle Smith. Whatever money or bonds or mortgages remain after my legacies have been deducted, I desire that the fund shall be divided into two parts, one-half ($\frac{1}{2}$) to keep up the Middleton Place, house and garden, and the other to be given to the Asylum for the Blind in Spartanburg."

The life estate given to Julius H. Heyward was conveyed by him to the remainderman, J. J. Pringle Smith, who contends that by the first clause of this paragraph of the will there passed not only the real estate, but also all the personal property in the dwelling house and other buildings on the land and upon the premises, not specifically disposed of by the will.

The word "property" is a generic term and includes both real and personal property. As employed in this paragraph of the will, I am satisfied that it includes, not only the land and houses, but also the personal property in the house and on the lands and used in connection therewith.

The Middleton Place on the Ashley River, which has been in the Middleton family for generations, is famous for its beauty. It was but natural that Mrs. Heyward, herself a member of the Middleton family, should desire that the Middleton property should be kept together and properly maintained. Accordingly, she provided that the property should belong to her husband, Julius H. Heyward, for life or until his remarriage, and then should pass to her kinsman, J. J. Pringle Smith, who is a descendant of the Middletons. I hold, therefore, that the words "the property on the Ashley River called Middleton Place, and the adjoining tracts" include, not only the lands and houses, but the personal property in the houses and on the lands not otherwise specifically disposed of by the will. *Pell v. Ball,* Spears' Eq. 48; *McFadden v. Helpey,* 28 S. C. 317; *Harbinson v. Knoxville Iron Company,* 76 Am. St. Rep. 683; *McKeon v. Bisbee,* 70 A. R. 642.

Under the conveyance from Mr. Heyward, and by reason of his remarriage, J. J. Pringle Smith is now vested with the entire interest and ownership of this property, real and personal.

By the last clause of this twelfth paragraph, the testatrix provides, "whatever money, bonds or mortgages remaining after my legacies have been deducted, I desire that the fund shall be divided into two parts, one-half (½) to keep up the Middleton Place, house and gardens, and the other to be given to the Asylum for the Blind in Spartanburg."

It seems perfectly plain that one-half of this fund was intended for the South Carolina Institute for the Deaf, Dumb and Blind, which is located in Spartanburg county.

I hold that this one-half is payable to the commissioners of the said institution.

It is urged in behalf of certain defendants that the bequest of one-half ($\frac{1}{2}$) of this fund, "to keep up the Middleton Place, house and gardens," is indefinite and void.

As already remarked, the Middleton Place has been in the Middleton family for many generations. It possesses great beauty and is an object of family pride. Mrs. Hey-ward manifested the desire that this place should ultimately go to a member of that family, and it was but natural that she should make some provision for its upkeep. Furthermore, the family vault, containing the bodies of the Middleton dead was located upon this place, and Mrs. Heyward, in the opening paragraph of her will, expressed the desire that her body should be placed there. This provision reads as follows: "I desire that my body shall be placed in the family vault at Middleton Place, where those I love already sleep looking for the resurrection of the dead and the life of the world to come."

It was but natural that Mrs. Heyward should desire to make some provision for the upkeep and maintenance of a place hallowed by ancient family ties and sacred as the resting place of herself and of her ancestors.

While the will did not expressly designate a trustee of this fund, it is, nevertheless, clear that the testatrix intended that the fund should be placed in charge of the person having possession and custody of the place, to wit, her husband, until his death or remarriage, and then to the remainderman, J. J. Pringle Smith.

I, therefore, hold that the trust is not indefinite, that it is in the nature of a charitable trust, and that the will has by implication designated the trustee. But even if a trustee had not been named, it would have been the clear duty of this Court to appoint one, and I hold that in such case the present owner, J. J. Pringle Smith, should properly be

named as trustee to whom the funds should be paid and who should be charged with its due administration. And it is ordered. *Attorney General v. Jolly,* 1 Rich. Eq. 299; *Drennan v. Augurs,* 98 S. C. 391.

In reference to the provision above quoted, the following question has been submitted for the decision of the Court: "Are the legacies given by the will, including the annuities, to be deducted from the money, bonds and mortgages owned by the testatrix at the time of her death, and is only the remainder of such money, bonds and mortgages, after deducting the said legacies and annuities, to be divided one-diamonds, which I direct shall be sold and the proceeds half to keep up Middleton Place, house and garden, and the other to be given to the Asylum for the Blind in Spartanburg, and did the testatrix die intestate as to the remainder of the estate undisposed of by the will, or did the testatrix intend that the whole of her estate, after the payment of debts, legacies and annuities, should be divided into two parts as directed in article 12 of her said will?

My conclusion is that the testatrix did not die intestate as to any part of her estate, but that she intended that the whole of her estate, real and personal, after the payment of debts and provisions for all specific devises of real estate and legacies and annuities, should be divided into two parts and go as directed in article 12 of her will.

The next question arises under paragraph 14, whereby testatrix gives her adopted daughter, Elizabeth V. Williamson, "all my jewelry with the exception of my largest gold watch, which I leave to my husband, and my mother's given to my brother, Henry Middleton." I conclude that this bequeath to Elizabeth V. Williamson carries the watch in question and all other property properly designated as jewelry and not otherwise specifically disposed of.

The next question is one arising between the executors. It appears from the testimony that the plaintiff, Robert

T. Smith, first qualified as executor, and later on the defendant, Julius H. Heyward, likewise qualified. A very serious dispute has arisen between them as to the handling of the funds and its administration. It is manifest from the correspondence that this controversy cannot be amicably settled between them, and that by reason thereof the interest of the estate would be put in jeopardy and seriously embarrassed. Under the circumstances, I conclude that it is necessary for the Court to interfere and appoint a receiver, who shall be charged with the administration of the funds belonging to the estate. Indeed, all parties to the controversy, including the executors, practically admitted that unless the executors could agree it would be necessary for the Court to appoint a· receiver. The parties were unable to agree upon a receiver, and after due consideration I have determined to appoint as receiver Mr. E. M. Blythe, a member of the Greenville bar. It is, therefore, ordered that E. M. Blythe be, and he is hereby, appointed as receiver of the estate of Elizabeth M. Heyward, deceased, remaining in the hands of the executors and charged with the duty of carrying out the provisions of the will.

It is further ordered that he do forthwith enter into bond in the sum of five thousand ($5,000) dollars, to be approved by the clerk of the Court, conditioned for the faithful performance of his duties with leave to any party hereto to move for an increase in the amount of said bond if he should be so advised.

It is necessary that the executors should account for all their acts and doings. It is, therefore, ordered that this case be referred to the master and that the executors do account before him for all their acts and doings.

And it is further ordered that he report what attorney's fees, if any, should be paid, with leave to report any special matter. T. J. Mauldin, Presiding Judge. July 26, 1919.

*Mr. L. K. Clyde,* for Julius H. Heyward, as exor., etc., cites: *Devise of property known as "Middleton Place," did not include personal property:* 48 S. C. 408. *Trust is a private one, not a charitable trust, and obnoxious to the rule against perpetuities:* Rand. Perp. 48; Lewison Perp. 164; 1 Jar. Wills 226, and note; Perry Trusts 345, 348; 37 S. C. 463; Ann. Cas. 1917e, 857; 48 S. C. 446. *Executors not liable for each other's acts unless there be connivance or gross negligence:* 4 DeS. 65; 3 Rich. Eq. 341; 11 Ves. 335; 3 Rich. Eq. 132; 8 S. C. 246; 18 S. C. 1. *Executors should not be removed except for wilful, criminal misconduct, or improper disposition of assets:* 18 S. C. 396; McM. Eq. 22; 3 Pom. Eq. Jur. 361, 362; 31 S. C. 198; 33 S. C. 324.

*Mr. Julius H. Heyward,* for himself, cites: *Executors may work separately and each is liable only for his own acts:* 11 R. C. L., sec. 491; 9 L. R. A. 223; 30 S. C. 549; 18 S. C. 1; 18 S. C. 199; 18 S. C. 396; 10 S. C. 246; 8 S. C. 246; 1 Hill L. 4; 3 Rich. Eq. 319; Dud. Eq. 30. *Estate can be taken from executors only to preserve assets:* 3 Williams Executors (6th Ed.) 2143, and note; 11 R. C. L., sec. 64; 18 S. C. 396; McMull. Eq. 22.

*Messrs. Smythe & Visanska,* for Henry Middleton, appellant, cite: *Intention must govern, and it must be drawn from words of the will itself:* Bail. Eq. 12; *Id.* 302; 9 Rich. Eq. 472; 10 S. C. 387. *Meaning of word "property:"* 1 Hill Eq. 95; 2 Hill Eq. 50; 48 Atl. 586-587. *Parol testimony not competent to show intention not expressed in the will:* 31 S. C. 606-7. *No residuary clause in will, in spite of opening clause of will indicating an intention to dispose of everything:* 4 Rich. Eq. 25; Hill Eq. 95; Harp. Eq. 117-121, 122; 23 S. C. 258, 269; 48 S. C. 408. *Bequest of fund to keep up "Middleton Place" void, as a perpetuity:* 30 Cyc. 1482. *What is a charity:* 48 S. C. 444-46; Ambler 651; 95 U. S. 303; 116 N. E. 946. *Bequest void for uncer-*

*tainty:* 21 Atl. 906, 909; 37 S. C. 462, 463. *Private ceme-
tery not a charity:* 21 R. C. L. 316; 11 C. J. 325; 48 Atl.
1027, 1028; 94 Atl. Rep. 1060; 98 S. C. 391.

*Messrs. Miller, Huger, Wilbur & Miller* and *Haynsworth
& Haynsworth,* for plaintiff-respondent, cite: *Independent
administration by Heyward would deprive coexecutor of
joint control and still leave him liable for Heyward's acts:*
2 Hill. Ch. 215; 3 Rich. Eq. 132; 3 Rich. ·Eq. 318; 8 S. C.
244; McM. Eq. 497; 15 S. C. 236; 1 Hill L. 3; 17 A. & E.
Enc. Law 618; 32 Ga. 31.

*Mr. F. H.·Horlbeck,* for respondent, J. J. Pringle Smith,
cites: *J. J. Pringle Smith took by implication an estate in
fee in remainder upon death or remarriage of Heyward:*
128 Mass. 375; 74 S. C. 164. *Intention of testatrix must
be ascertained:* 104 S. C. 441; 59 S. C. 137; *and will must
be read as a whole:* 104 S. C. 445. *Language of will must
be construed in light of extrinsic circumstances:* 18 Wall.
493; 27 S. C. 297; 30 S. C. 188; 46 S. C. 169; 30 A. & E.
Enc. Law (2d Ed.) 663-66; 40 Cyc. 1413. *Parol evidence
of extrinsic circumstances is admissible:* 14 Rich. Eq. 268;
1 Redfield Wills (3d Ed.) 639; 70 S. C. 497; 46 S. C. 240;
99 S. E. 500; 30 A. & E. Enc. Law (2d Ed.) 676; 40 Cyc.
1392. *Law will presume that a will disposes of whole
estate:* 1 DeS. 241; 31 S. C. 413; 109 S. C. 528; 30 A. & E.
Enc. Law (2d Ed.) 668; 40 Cyc. 1409. *"Property"* defined
*to include personal property:* Speers Eq. 83; 6 Words &
Phrases 5693; 23 A. & E. Enc. Law (2d Ed.) 260; 32 Cyc.
648. *Was there a residuary clause?* 31 S. C. 22. *Rule
against perpetuities applies only to the restraints imposed
beyond the legal period, and does not render the bequest
void in toto:* 22 A. & E. Enc. Law (2d Ed.) 723, 708.
*Bequest to an unincorporated institution to keep up a grave-
yard is good:* 98 S. C. 391. *Courts will go far to preserve
sanctity and maintenance of a family burial place:* 91 S.
C. 41.

October 11, 1920.

The opinion of the Court was delivered by MR. JUSTICE HYDRICK.

Plaintiff is one of the executors of the will of Mrs. Elizabeth Middleton Heyward. He brought this action against Julius H. Heyward, the other executor, and the heirs, devisees, and legatees of testatrix, to have the Court construe her will, determine the validity of certain bequests, and the proper disposition of the residue of the estate, and also for the appointment of a receiver, on account of dissensions existing between the executors.

Testatrix had no children. Her only heirs are her husband and brother. She wrote her own will. In item 1, she directs that her body "be placed in the family vault at Middleton Place, where those I love already sleep," and says, "as for all the estate which God hath been pleased to bless me with in this world, I give, devise and bequeath the same as follows." In items 2 to 10, inclusive, she makes sundry devises and bequests, including annuities for life to five different persons, aggregating $2,750. In item 11, she directs that her half interest in her dwelling house on Washington street, in Greenville, be sold, as soon as it will bring $15,000, "and the money invested for the purpose of paying my legacies, debts," etc. Item 12 reads:

"I will and bequeath to my husband, Julius Heyward, for the term of his natural life, the property on Ashley River called Middleton Place, and the adjoining tracts, unless he marries again, when it is to become, without division, the property of my cousin, J. J. Pringle Smith. Whatever money or bonds or mortgages remain after my legacies have been deducted, I desire that the funds shall be divided into two parts, one-half to keep up Middleton Place, house and garden, and the other to be given to the asylum for the blind in Spartanburg."

In item 13, she appoints her husband, and cousins, Robert T. and Henry A. M. Smith, executors, "with full power, to them, or the survivors of them, to sell and convey any portion or portions of my said estate that may be necessary in order to carry out the provisions of this will." In item 14, she gives her adopted daughter "all my jewelry, with the exception of my largest gold watch, which I leave to my husband, and my mother's diamonds, which I direct shall be sold and the proceeds given to my brother, Henry Middleton." In item 15, she gives to the Gibbes Art Gallery, in Charleston, "all my statuary now at Middleton Place."

Besides the property specifically mentioned in the will, testatrix owned a house and lot in Hendersonville, N. C., and personal property in different places, some in Greenville and some in the house at Middleton Place, and in other houses on that and the adjoining tracts, and elsewhere.

Mr. Heyward, the life tenant of Middleton Place, sold and conveyed all his interest in and to that place and the personal property thereat, at date of the conveyance, to the remainderman, J. J. Pringle Smith, and married again.

The remainder to Mr. Smith was not contingent upon his surviving the life tenant. The right to the estate was vested in him at the death of testatrix. The right to possession alone was postponed, until the marriage or death of the life tenant. The contingency mentioned had reference only to the duration of the life tenant's estate. The effect of the conveyance and remarriage of Mr. Heyward was to accelerate Mr. Smith's right to possession and enjoyment.

Mr. Smith contended that the devise of Middleton Place, and the adjoining tracts carried all the personal property in the dwelling house and other buildings, or elsewhere, on the land devised, and the Circuit Court so held. That conclusion was based chiefly upon the broad meaning of the word "property" used in the devise, and much

authority was cited to show the very comprehensive meaning of that word, which is conceded. But the construction adopted cannot be sustained. It overlooks the fact that the generality of the meaning of the word was restricted by the context to the property "on Ashley River called Middleton Place, and the adjoining tracts," which means only the land. Ordinarily, when we speak of a place or a tract, we are understood to mean land; and the general rule is that the grant or devise of a designated house, or place, or tract, does not include personal property in the house, or elsewhere on the land. There is nothing in the immediate context or in the will, as a whole, to vary the general rule. But, on the contrary, there are other provisions of the will which show that testatrix recognized the general rule stated, and did not contemplate that the things in a house went with the devise of the house, for in item 3 she devised a house in Hendersonville to her adopted daughter, and later on in the same item, in describing the personal property given to her, she says, "and my china in the Washington street house and the Hendersonville house; and in item 15 she disposes of the statuary at Middleton Place. Our conclusion is that Mr. Smith acquired no title to any of the personal property at Middleton Place or on the adjoining tracts by virtue of the devise thereof in item 12.

The Circut Court further held that the entire estate is well disposed of, that is, there is no intestacy as to any part of it, and all that remained after carrying out the provisions of the will should be divided into two parts, which should go as directed in item 12; that the provision for keeping up Middleton Place, house and garden, was in the nature of a charitable trust, and, therefore, not in violation of the rule against perpetuities, and the present owner of the place was appointed trustee of that fund. These conclusions are erroneous.

First, as to the provision for keeping up Middleton Place, house and garden. Middleton Place is a plantation on Ash ley River that has been in the Middleton family since 1741. The buildings and gardens were laid out and elaborated between that date and the year 1755. From time to time, since the last mentioned date, they have been extended, improved, ornamented, and beautified by the successive proprietors at great expense, so that for many generations they have been a source of great pride and pleasure to the family and its connections; and it has been the earnest wish of its successive owners that its pristine beauty should be preserved, and also that it should be kept in the family forever. This desire has been stimulated and augmented by the fact that, at an early date, a family burying ground was laid out on the place, in which many of their dead have been buried, and in more recent years an expensive tomb was built in which the remains of members of the family, including the father and mother of the testatrix and the testatrix herself, have been laid to rest. It was but natural, therefore, that she was devoted to the place and regarded it with a peculiar pride and veneration, and desired that it should be kept in the family and maintained in the future as it had been in the past.

While such a wish is perfectly natural and to be considered with the respect due to a commendable sentiment, it cannot be allowed to overrule the settled rule of law that donations of property in perpetuity, except for charitable uses, are void, as against public policy. That rule is so well settled and so universally applied by the Courts that it needs no citation of authority in support of it. But to obviate the effect of the rule it was argued that that bequest was in the nature of a charity, because it provided incidentally for the care of the burying ground of the family dead, and the keeping of the family tomb, and that argument appears to have influenced the decision of the Circuit Court. But the

circumstances stated do not impart to the bequest any feature of a charity. While we would not attempt an all inclusive or exclusive definition of a charity, we have said:

"The object and effect of every charitable bequest is to confer a public benefit, else it would be no charity." *Dye v. Beaver Creek Church,* 48 S. C. 444, 26 S. E. 717, 59 Am. St. Rep. 724.

Mrs. Heyward's bequest confers no public benefit. It has not a single earmark of a charity. It is purely private and personal. Its primary purpose is to keep up a private estate and benefit only a single individual, the owner of the property. Whether it may ever be of any benefit even to any other member of the family depends upon what the present owner may do. He may, if he be so minded, disregard the family policy and wish, and sell the place to a stranger. If he should do so, what would become of the fund? Would he be entitled to keep it, or would it go to his grantee of the place? Besides violating the rule against perpetuities, the bequest is too vague and indefinite to be enforced as a private trust.

*Drennan v. Augurs,* 98 S. C. 391, 82 S. E. 622, not only does not sustain the conclusion of the Circuit Court, but clearly points the other way. There the bequest was "for keeping up the Augurs line of graves at Fishing Creek Church, and also as an endowment fund for the benefit of Fishing Creek Church." The graveyard was on the church property, and was kept up at the expense of the church. Moreover, it was a public graveyard, in which any member of the public, whether a member of that church or not, might be buried, and, therefore, it was considered that the keeping up of the graveyard conferred a benefit on the public. But the Court was not satisfied to rest the decision upon those circumstances alone, but put it mainly upon the conclusion that the bequest was primarily intended as an endowment fund for the benefit of the church, admittedly a

charity, and that the provision for keeping up the Augurs graves was not intended as an enforceable trust, but was rather to be regarded as of a precatory nature as to a matter which was merely incidental and ancillary to the main purpose. By the clearest implication, the decision recognizes the rule against perpetuities, and that under it the bequest would have been void, but for the circumstances and features above mentioned, which made it a charity, or a benefit conferred on the public.

"It is now well settled that, in the absence of a statute, a bequest for the perpetual care, improvement, or embellishment of a tomb, monument, or burial lot of the testator, his family, relatives, or other individuals named, is not a bequest for a charitable purpose, and is void as a perpetuity." 5 R. C. L. 336.

So much of item 12 as gives one-half of the residuum there mentioned "to the asylum for the blind in Spartanburg" is good. While there is no asylum for the blind in the city of Spartanburg, there is in Spartanburg county, and near the city, a public institution, known as "The Asylum for the Deaf, Dumb and Blind." Clearly that was the institution intended, and the misnomer is immaterial. Perry on Trust, section 730; 40 Cyc. 1447; 5 R. C. L. 311. The same may be said as to the gift of statuary to the Gibbes Art Gallery, in Charleston.

As to the construction of item 14. Testatrix left a watch (other than the one there given to her husband) which was studded with a diamond or diamonds. Does that watch go to the adopted daughter, as jewelry, or is it to be sold, as part of her mother's diamonds, and the proceeds given to her brother? It does not appear whether the watch ever belonged to the mother of testatrix, or whether it was studded with one or more of her mother's diamonds. It was rightly held, therefore, that it goes to the adopted daughter as jewelry, because the testatrix herself considered and classed her watch as jewelry.

It is stated that all the general and specific legacies have been paid and satisfied; and the Court was asked to decide whether the annuities are to be considered as legacies, in the sense in which that word is used in item 12. An annuity may be given by way of a legacy. Those here given are legacies. 2 Williams on Executors 480; 2 Cyc. 469. A simple bequest of an annuity will ordinarily take precedence over a residuary legacy. 2 Williams on Executors, 662-664.

The next question is, does the residuum of "money. or bonds or mortgages," mentioned in item 12, include only property of that kind on hand at the death of testatrix, or such as was on hand at that time, plus such as may be added thereto in the course of administration? Testatrix practically answered that question herself; for in item 11 she plainly expressed the intention that the proceeds of the sale of her half interest in the Washington street house and lot should be invested for the purpose of paying her legacies, debts, etc. Evidently she contemplated that, when any of her property was sold, the proceeds would be invested in bonds and mortgages, as that is the most usual method of investing trust funds. And in item 13 she gave her executors power to sell any portion, or portions, of her estate that may be necessary to carry out the provisions of her will. That means that the entire estate may be devoted to that purpose if it be necessary, but only so much as may be necessary. The power to sell is measured by the necessity of the situation. It follows that the executors may sell so much of the estate as may be necessary to provide and keep a fund which will be sufficient, when put at interest, to yield net income enough to pay the annuities. It follows, too, that it cannot be certainly determined, until the annuities are all paid or satisfied, what the residue of that fund or the estate will be, as it may be necessary to add to it from time to time, on account of losses or fluctuations

in the rate of interest.    Whatever may remain of the corpus of that fund, from whatever source derived, whether money, bonds, or mortgages on hand at the death of testatrix, or the proceeds of the sale of her half interest in the Washington street house and lot, or from the sale of any other property of the estate, or from all these together, will constitute the residuum contemplated in item 12.

There is no general residuary clause in the will.    That fund in item 12 is restricted as hereinbefore indicated.    It follows that as to all portions of the estate not specifically disposed of, and not disposed of by the restricted residuary clause contained in item 12, there is no intestacy.  As said above, it is impossible to determine the extent of intestacy until the annuities have all been paid, or satisfied, and all other provisions of the will have been carried out.

The fact that testatrix did not intend to die intestate as to any of her property, which is conceded, for it is plainly expressed in the will, cannot vary the construction.    While the expression of such intention may be laid hold of to enlarge doubtful dispositions, it cannot supply the place of an actual disposition, express or reasonably to be implied.    There are numerous cases where a like intention was clearly expressed, yet partial intestacy resulted for want of an actual disposition of the entirie estate.    See *Peay v. Barber,* 1 Hill Eq. 95, and *Glover v. Harris,* 4 Rich. Eq. 25.    Even where there is a general residuary clause, there may be partial intestacy, for the disposition of the residue itself may fail, and to that extent the will is inoperative.    *Cheves v. Haskell,* 10 Rich. Eq. 534, 540.    In this case, we have only a restricted residuary clause, which is void as to one-half of the property therein attempted to be disposed of, and it certainly follows that to that extent there is intestacy.    Nothing passes under that clause, except "whatever money or bonds or mortgages remain" after the legacies have been paid.    We have already

indicated to what extent the residuum there specified may be increased by implication from the power to sell so much of the estate as may be necessary to raise a fund sufficient to carry out the provisions of the will. Beyond that the executors have no power to sell. The Court cannot enlarge the power or add any other kind of property to the kind specified in the residuum. That would be making a will for the testatrix rather than construing the one she made.

In construing a will, we must never forget the fundamental rule that the intention to which effect may be given must be found in the words used by the testator; otherwise, the statute, which declares that wills must be in writing, would be violated. In *Pell v. Ball,* Speers Eq. 48, 82, the Court said: "The statute, by requiring a will to be in writing, precludes a Court of law from ascribing to a testator any intention which his written will does not express; and, in effect, makes the writing the only legitimate evidence of the testator's intention. 'No will is within the statute which is not in writing, which is as much as to say that all that is effectual and to the purpose must be in writing, without seeking 'aid of words not written.' "

It follows that the testimony of previous declarations of testatrix of her intention as to Middleton Place was incompetent to affect the construction of the words employed by her in her will to express her intention.

As to the appointment of a receiver. The will was admitted to probate in July, 1915, at which time plaintiff alone qualified as executor. While he was sole executor, he delivered to Mr. Heyward, as his agent, certain securities of the estate, inferably for collection or reinvestment, as Mr. Heyward is an attorney and resides at Greenville, where most of the securities were invested, and Mr. Smith resides in Charleston, though the exact purpose was not stated. Thereafter, in February, 1916, Mr. Heyward qualified as executor, and entered upon the duties of that office, and

refused to return to plaintiff the securities which had been deliver to him, or to comply with plaintiff's proposal for a joint administration, by depositing all collections in bank to their joint account and paying out the same only on their joint check. Mr. Heyward also refused to co-operate with plaintiff in the administration. Upon allegations of these facts, plaintiff prayed for a receiver. At the hearing, Mr. Heyward agreed to the appointment of a receiver, on condition that the person appointed should be acceptable to both the executors. But they failed to agree upon any one, and Mr. Heyward objected to the appointment of a receiver, except upon the condition stated. Nevertheless, the Court appointed a receiver of its own selection.

The mere fact that executors or trustees do not or cannot agree as to the administration of their trust has never been considered sufficient ground for the removal of one or all of them and putting the estate in the hands of a receiver. Dissension amongst them may be expected, and, in some cases, it may be desirable, since it may result in advantage to the estate. Independence of judgment and action is one of the benefits contemplated in the appointment of more than one. To hold that the management may be taken from them on that ground alone would tend to impede and stifle the benefit contemplated and designed, which may be an advantage rather than a detriment to the estate. Therefore, so long as such dissensions are not carried to the extent of causing injury or loss to the estate, actually or reasonably to be apprehended, the Courts should not interfere.

The Courts have ever been reluctant to take the management of an estate from those to whom it has been confided by the testator, for to that extent the intention expressed in his will would be defeated. No doubt, the Courts have the power to do it in a proper case. But for obvious reasons it is a power which should be exercised with great caution.

and not at all, unless it is made to appear to be necessary for the protection of the estate, to prevent loss or injury to it from misappropriation, maladministration or fraud.

In *Stairley v. Rabe,* McM. Eq. 22, the Court said: "The rule certainly is that the administration will not be taken from an executor without strong reasons, 'because,' says Lord Erskine, in *Middleton v. Dodswell,* 18 Ves. 268, 'it is for the testator, not the Court, to say in whom the trust for administration of his effects shall.be reposed.' "

To the same effect see *Witherpsoon v. Watts,* 18 S. C. 396, 422; *Anderson v. Butler,* 31 S. C. 183, 198, 9 S. E. 797, 5 L. R. A. 166, 34 Cyc. 61-65. 11 R. C. L. 68; *Fairbairn v. Fisher,* 57 N. C. 390; *Burt v. Burt,* 41 N. Y. 46. The case last cited is on all fours with this case. There the parties were brothers and executors of their father's will. The plaintiff alleged that the defendant took exclusive possession of the securities and papers of the estate, and refused him access to them, and would not deliver to him even a part of them, and excluded him from participation in closing up the estate; therefore the plaintiff prayed for the appointment of a receiver. The trial Court appointed a receiver, and the decree was affirmed by the Supreme Court. In reversing that decree, the Court of appeals said:

"So far as appears both are men of good character, of competent business capacity, and of ample responsibility, to answer for their due administration of the estate committed to them, and both received from the testator that mark of high confidence evidenced by the trust reposed in them by the will; a confidence that a Court of equity will not override, by withdrawing the powers thus conferred, except upon clear grounds of danger to the interests of those affected by the administration, of which danger the proofs in this case do not show a shadow of pretense."

And at page 50 the Court said, as to the appointment of a receiver, that it was "an original and bold experiment, an

undertaking to supersede and displace a trustee and executor created by will upon grounds sanctioned by no precedent, and sustained by no authority."

There is nothing to show any default or dereliction of duty on the part of Mr. Heyward in respect of his administration. No one complains of it, except the plaintiff, and his sole complaint is because Mr. Heyward refuses to turn over to him any of the assets in his hands, or to associate with him in a joint administration. There is no charge of maladministration, misappropriation, incompetency, or financial irresponsibility on the part of Mr. Heyward, or that the estate has suffered injury or loss by reason of the facts alleged. Plaintiff does allege that a separate administration by each of the assets in his hands will result in detriment to the estate. But that is merely his opinion, based upon insufficient grounds, to wit, that it is a necessary result of a separate administration by each of the assets in his hands. But, clearly, that is a *non sequitur.* The authorities agree that such an administration is not only lawful, but feasible; otherwise, it would not be sanctioned by the Courts.

According to our own decisions, "coexecutors, however numerous, are regarded in law as an individual person, and, by consequence, the acts of any one of them, in respect to the administration of the effects, are deemed to be the acts of all, for they have all a joint and entire authority over the whole property." *Roseborough v. McAliley,* 10 S. C. 235, 246. It follows that each executor has the right to the custody and control of the securities; and that, as more than one cannot have the actual manual custody thereof at the same time, the one who has that custody is entitled to retain it, and, also, that, as a general rule, each is liable only for his own defaults. *Gates v. Whetstone,* 8 S. C. 244, 28 Am. Rep. 284, and cases cited; *Chapman v. City Council,* 30 S. C. 549, 9 S. E. 591, 3 L. R.

A. 311, 11 R. C. L. 405. Therefore it cannot be said, as matter of law, that Mr. Heyward ought to have turned over to Mr. Smith the securities in his hands, or any part of them, without adding that it would likewise have been Mr. Smith's duty to return them to Mr. Heyward, on demand. The proposition is self-destructive.

Mr. Smith seems to fear, and alleges, that he may be held responsible for any default on the part of Mr. Heyward in the administration of the assets so turned over to him. But the facts and circumstances stated do not afford sufficient ground for such a liability or fear. In *Gates v. Whetstone, supra,* the circumstances which will give rise to such a liability are discussed, and the cases reviewed, from which it appears that one executor will not be held liable for the default of another, unless he contributes to it in some way, by such negligent act or omission as will warrant the inference that he countenanced, connived at, or acquiesced in it, or negligently failed to take steps to prevent it, after knowledge of the danger of it.

It is not alleged that Mr. Heyward had failed to make his returns to the probate Court, or that he has refused to give the plaintiff information of the securities in his hands, or to produce them, on proper occasion, for plaintiff's inspection, or to allow him to credit thereon any collections thereon made by plaintiff, or that he has refused to join the plaintiff in any matter which by law requires joint action. In the absence of any allegation or proof of any wrongful act or omission on his part, which has resulted in loss or injury to the estate, or that there is any real danger of such loss or injury, the Court was not warranted in taking from him the rights conferred upon him by the testatrix and by the law, under his appointment as executor.

As to points not hereinbefore discussed, the Circuit decree should be affirmed, but in other respects it should be modified so as to conform to the views herein announced.

Modified.

MR. CHIEF JUSTICE GARY and MR. JUSTICE FRASER concur.

MR. JUSTICE WATTS, *dissenting*. For the reasons stated by his Honor, Judge Mauldin, in his Circuit decree, it is the judgment of this Court that the judgment of the Circuit Court be affirmed.

MR. JUSTICE GAGE. I concur in the opinion of Mr. Justice Watts.